UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ESTATE OF MELINDA DUCKETT, by and
through her personal representative,
KATHLEEN CALVERT and BETHANN
EUBANK and WILLIAM GERALD EUBANK, as
legal parents of MELINDA DUCKETT, and as
grandparents and next friends of T.D., a
childwho and M.E., a minor sibling of MELINDA
DUCKETT,

                         Plaintiffs,

v.                                                    Case No.  5:06-cv-444-Oc-10GRJ

CABLE NEWS NETWORK LLLP (CNN), a
Delware Corporation, NANCY GRACE,
individually and as an employee/agent of CNN,
JOSHUA DUCKETT,

                         Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

        Pending before the Court is Plaintiffs' Petition To Remand To State Court. (Doc.

10.) Defendant Joshua Duckett has filed a memorandum in opposition (Doc. 14) and

Defendants CNN and Nancy Grace have filed a memorandum in opposition (Doc. 17)

and, therefore, the matter is ripe for review.[2]  For the reasons discussed below,

Plaintiffs' Petition To Remand To State Court is due to be **DENIED**.

---

        [1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

        [2] Plaintiffs also have filed a Motion For Leave To File Plaintiffs' Supplemental Brief (Doc. 22), which Defendants CNN and Nancy Grace oppose. (Doc. 24.) Plaintiffs request permission to respond to the affidavit of Nancy Grace and other materials appended to Defendant's opposition to the motion to remand. Although Plaintiffs violated Local Rule 3.01(d) by improperly filing their supplemental brief as an attachment to their motion for leave to file a supplemental brief, because the Court has considered the arguments and matters raised by Plaintiffs in their Supplemental Brief - and the matters raised in the Supplemental Brief do not impact the Court's ruling - Plaintiffs' Motion For Leave To File Supplemental Brief is due to be **GRANTED** and Plaintiffs' Supplemental Brief (Doc. 22) shall remain as filed.

## I. <u>BACKGROUND AND FACTS</u>

This is an action brought by Kathleen Calvert, the personal representative of the Estate of Melinda Duckett, Bethann and William Gerald Eubank, the parents of Melinda Duckett and M.E., the minor sibling of Melinda Duckett, against Cable News Network LLLP (CNN), Nancy Grace ("Grace"), individually and as an employee of CNN and Joshua Duckett ("Duckett"), the father of Trenton Duckett, for claims related to the suicide of Melinda Duckett.[3] According to the allegations in Plaintiffs' Complaint, Melinda Duckett committed suicide shortly after she participated in an interview by Grace on the CNN Headline News' "Nancy Grace" show, which was conducted as part of an ongoing story of national significance about Melinda and Joshua Duckett's missing two-year-old son, Trenton Duckett.[4]

The Plaintiffs are alleged to be residents and citizens of the State of Florida. Defendant Grace is a citizen of the state of Georgia. At the time this lawsuit was filed in state court, Defendant CNN was a Delaware limited partnership with its principal place of business in Atlanta, Georgia.[5] The general partner of CNN was Turner Broadcasting System, Inc., a Georgia corporation with its principal place of business in Atlanta, Georgia.[6] The limited partner of CNN was CNN Investment Company, Inc., a Delaware

---

[3] Doc. 5, Complaint, ¶ 15.

[4] *Id.* at ¶ 6.

[5] Doc. 1, ¶4.

[6] *Id.*

corporation with its principal place of business in Atlanta, Georgia.[7] Defendants advise

that CNN is now a corporation with its principal place of business in Georgia.[8] Although

the record is not clear as to when CNN became a corporation it is irrelevant for

purposes of diversity of citizenship because in either event CNN is considered a citizen

of Georgia, the place of its principal place of business and a citizen of Delaware, the

state of its formation. Joshua Duckett, however, is a citizen of the state of Florida and,

accordingly, if the joinder of Joshua Duckett in this case is proper the Court would not

have diversity jurisdiction over the claims in this case.

The Complaint - filed in state court and removed to this Court - purports to allege

claims for: (1) wrongful death by the Estate against Grace and CNN as a consequence

of Melinda Duckett's suicide after she was interviewed by Grace, and (2) intentional

infliction of emotional distress and misappropriation of image/likeness by the parents of

Melinda Duckett and her minor sibling against CNN and Grace based upon broadcasts

of stories containing the interview of Melinda Duckett and related to the disappearance

of Trenton Duckett. The only count which names Joshua Duckett, is Count III, which

purports to allege a claim for an accounting against Grace and Joshua Duckett relating

to the T.D. Family Charitable Trust Fund. Plaintiffs seek "to ensure that all funds

donated for locating T.D. are used for said purposes and not for any ill-conceived or

improper purpose."[9]

---

[7] *Id.*

[8] Doc. 17, p. 4, n.5.

[9] *Id.* at ¶ 28.

Plaintiffs originally filed suit in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida, on November 21, 2006.[10] On December 20, 2006, Defendants CNN and Grace timely filed a Notice of Removal. In their Notice of Removal, Defendants CNN and Grace state that "Plaintiffs have fraudulently joined Defendant Duckett, a citizen of the state of Florida, in an effort to defeat federal court jurisdiction" and therefore the Court should disregard the citizenship of Joshua Duckett for purposes of determining whether the Court has diversity jurisdiction.

According to Plaintiffs,[11] Defendant Grace and Joshua Duckett worked together to set up the T.D. Family Charitable Trust Fund (the "Charitable Trust"), which maintained a bank account at Sun Trust Bank, and solicited donations for the Charitable Trust from the general public on the "Nancy Grace" show for the purpose of finding Trenton Duckett. Plaintiffs contend that Defendants Duckett and Grace directed persons to make donations through a website, http://helpfindtrenton.com.[12] Plaintiffs allege that Joshua Duckett improperly used the trust funds to purchase personal items and therefore they are entitled to an accounting requiring Defendants Joshua Duckett and Grace to list all donations that have been forwarded to the "Nancy Grace" show, to the Duckett family, and to the website to make sure that the funds are "used for said purposes and not for any ill-conceived or improper purpose..." Plaintiffs argue that they

---

[10] Doc. 5.

[11] In support of their arguments, Plaintiffs point to allegations in their Amended Complaint and documents attached thereto. Doc. 11. Although, the focus of the Court in resolving a motion to remand is upon the allegations in the complaint at the time of removal the Court to the extent that the information appended to the amended complaint is relevant to the one claim for accounting against Joshua Duckett the Court will consider the information.

[12] Doc. 10, Exs. "B" and "C".

are entitled an accounting because Joshua Duckett has a fiduciary relationship with Trenton Duckett and the donors to the account. According to Plaintiffs, because Trenton Duckett is a direct beneficiary of the trust fund Joshua Duckett owes a duty to administer the trust fund solely in the interest of the beneficiary.

The Defendants have filed affidavits of Nancy Grace[13] and Laurie F. Konnerth,[14] the sole trustee of the Charitable Trust, that stand unrebutted by Plaintiffs, and establish that the Plaintiffs have no basis whatsoever for their equitable accounting claim against Joshua Duckett.

With regard to the allegations concerning the Charitable Trust, Grace avers that "Other than publicizing information about the trust fund while covering Trenton Duckett's disappearance, neither I nor CNN has any involvement with the ownership, administration, disbursements of funds, or any other aspect of the trust fund."[15] Ms. Konnerth avers that she is the sole trustee of the Trenton Duckett Charitable Trust Fund and the only signatory on the Trust's two bank accounts.[16] Most notably, Ms. Konnerth avers that the Charitable Trust has never cashed or negotiated the two checks allegedly sent by Plaintiffs to the Charitable Trust,[17] thus establishing that the Plaintiffs are not donors to the Charitable Trust.

---

[13] Doc. 3.

[14] Doc. 16.

[15] Doc. 3, ¶6.

[16] Doc. 16, ¶2.

[17] *Id.* ¶¶ 3 and 4.

## II. DISCUSSSION

It is "by now axiomatic that the inferior federal courts are courts of limited jurisdiction," empowered "to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution and which have been entrusted to them by a jurisdictional grant authorized by Congress."[18] A defendant may "remove a case to federal court only if the district court could have had jurisdiction over the case had the case been brought there originally."[19] District courts have original jurisdiction over diversity cases, pursuant to 28 U.S.C. §1332.[20]

Where a plaintiff has objected to a defendant's removal, the burden of proof is on the defendant, as the removing party, to prove by a preponderance of the evidence that the action was properly removed.[21]    As a practical matter, whether an action may be removed to federal court is determined from the record before the court at the time the notice of removal was filed in federal court.[22]

Defendants removed this action from state court based upon diversity jurisdiction. Defendants contend that Defendant Joshua Duckett was fraudulently joined

---

[18] University of South Alabama v. The American Tobacco Company, 168 F.3d 405, 409 (11th Cir. 1999).

[19] Darden v. Ford Consumer Finance Co., Inc., 200 F.3d 753, 755 (11th Cir. 2000).

[20] Morrision v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000).

[21] Kirkland v. Midland Mortgage Company, 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001).

[22] 14 Wright, Miller & Cooper § 3734 Federal Practice and Procedure (updated through 2006).The Eleventh Circuit has announced that the district court's inquiry is not limited to just the complaint. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) (stating that the Court adopts the approach of the Fifth and Ninth Circuits that when a complaint does not claim a specific amount of damages and the jurisdictional amount is not facially apparent form the complaint, the court should look at the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed).

as a party to defeat diversity. Fraudulent joinder is a judicially-created doctrine that provides an exception to the requirement of complete diversity.[23] While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P.  56(b)", the jurisdictional inquiry "must not subsume substantive determination."[24] Therefore, although the Court is entitled to look to the evidence filed by the removing party, the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."[25]

The Eleventh Circuit has recognized fraudulent joinder in three situations.[26] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.[27] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[28] The third situation - recognized in *Tapscott v. MS Dealer Service Corp.*[29] -- is where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the

---

[23] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir. 1998).

[24] Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5th Cir. Unit A 1981)).

[25] *Id.*

[26] Triggs, 154 F.3d at 1287

[27] *Id. citing* Choker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983), *superseded by statute on other grounds;* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[28] *Id.*

[29] 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds*, Cohen v. Office Depot, Inc., 204 F.3d. 1069 (11th Cir. 2000).

7

nondiverse defendant.[30] The first type of fraudulent joinder is relevant to the Court's analysis.

The only claim in the Complaint relevant to fraudulent joinder is Plaintiffs' claim in Count III against Joshua Duckett for equitable accounting.

Defendants argue, *inter alia,* that the accounting claim against Joshua Duckett "constitute[s] fraudulent joinder because: (i) Count III fails to state a claim upon which relief can be granted, and (ii) Plaintiffs lack standing to assert such a claim in any event.[31]

Under Florida law to state a claim for equitable accounting a party must show that: (1) the parties share a fiduciary relationship or that the questioned transactions are complex, and (2) a remedy at law is inadequate.[32] Standing to maintain a claim for an accounting where the claim relates to a trust is dependent upon whether the party asserting the claim has "a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation.[33]

---

[30] Triggs, 154 F.3d at 1287(citing Tapscott, 77 F. 3d at 1355.)

[31] Defendants also argue that Plaintiffs fraudulently joined Joshua Duckett because there is no real connection between the claims asserted against CNN and Grace in Counts I, II and IV, and the claim for accounting in Count III. While the Court agrees that there is no claim for joint, several and alternative liability alleged in Count III, the Court does not need to resolve this argument because there is little question that the Plaintiffs have failed to allege any possibility of a claim against Joshua Duckett based upon the theory of equitable accounting and thus Joshua Duckett was fraudulently joined in this lawsuit.

[32] American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1071 (11th Cir. 2007); Kee v. National Reserve Life Ins. Co., 918 F.2d 1538, 1540 (11th Cir. 1990).

[33] Carvel v. Godley, 939 So. 2d 204, 207 (Fla. Dist. Ct. App. 2006) (quoting Provence v. Palm Beach Taverns, Inc., 676 So. 2d 1022, 1024 (Fla. Dist. Ct. App. 1996)).

For at least two reasons, Plaintiffs have not - and based upon the unrebutted evidence submitted by Defendants - cannot state a claim for equitable accounting against Joshua Duckett.

First - and most notably - Plaintiffs cannot establish that Joshua Duckett owes them a fiduciary duty. The evidence is unrebutted that the sole trustee of the Charitable Trust is Laurie Konnerth - and not Joshua Duckett. Under Florida law, only a trustee owes a fiduciary duty to the beneficiary of a trust, including the duty to account to beneficiaries.[34] Moreover, the sole signatory to the Trust's two bank accounts is Ms. Konnerth - and not Joshua Duckett. Thus, even if improper payments had been made to Joshua Duckett from the Charitable Trust for Joshua Duckett's personal expenses, that allegation does nothing to establish the existence of a fiduciary relationship by Joshua Duckett to the Charitable Trust or to the Plaintiffs.

In addition to the fact that Plaintiffs have failed to establish the existence of a fiduciary duty owed to them by Joshua Duckett, they have failed to establish that any of them are owed a fiduciary duty by the trustee of the Charitable Trust.

As a threshold matter, the Plaintiffs have failed to establish that they even contributed any funds to the Charitable Trust. While Bethann Eubank avers that she made a donation to the Charitable Trust in the amount of $5.00 in November 2006[35] and Kathleen Calvert, the personal representative of the Estate, avers that she made a

---

[34] Fla. Stat. §§ 737.307, 737.303 (2006). The 2007 Florida Statutes on trusts are effective as of July 1, 2007 and, therefore, do not apply to actions before that time.

[35] Doc. 22, Ex. A.

donation in the amount of $50.00 in November 2006 to the Charitable Trust,[36] Ms. Konnerth, the sole trustee, avers that neither check was cashed or negotiated. Plaintiffs have not submitted any evidence to rebut this statement. Consequently, the Plaintiffs are not even donors to the Charitable Trust and, therefore, would not have any standing or basis to complain about the disbursement of monies contributed to the Charitable Trust.

Moreover, even if the Plaintiffs had contributed funds to the Charitable Trust they would still lack standing to bring a claim for accounting against the trustee - let alone a claim against Joshua Duckett - because individuals making a monetary contribution to a charitable trust lack standing to sue the trustee, absent some other significant connection to the trust.[37]  "As a general rule, only the Attorney General may enforce a charitable trust"[38] because a charitable trust is normally established for the benefit of a charitable purpose and not for the benefit of a specific beneficiary.  Although in exceptional circumstances persons having a special interest in a trust or a special status under a trust instrument may have standing to enforce the trust,[39] that is not the case here. "[A] particular group of people has a special interest in funds held for a charitable purpose ... when they are entitled to a preference in the distribution of such

---

[36] Doc. 22, Ex. B.

[37] As a general rule, the contributors to a fund creating a charitable trust cannot request an accounting from the trustee for misapplication of fund or any other breach of the trust from the trustee. 14 C.J.S. Charities § 68; McFarland v. Atkins, 594 P.2d 758, 763 (Okl. 1978) (citing Holden Hospital Corporation v. Southern Illinois Hospital Corporation, 22 Ill. 2d 150, 174 N.E. 2d 793 (1961); Ludlum v. Higbee, 11 N.J. Eq. 342 (1895); Clark v. Oliver, 91 Va. 421, 22 S.E. 175 (1895); and 62 A.L.R. 881, 897 (1927)).

[38] State of Del. ex rel. Gebelein v. Florida First Nat. Bank of Jacksonville, 381 So. 22. 1075, 1077 (Fla. Dist. Ct. App. 1979).

[39] Id.

funds and the class of potential beneficiaries is sharply defined and limited in number."[40] The Plaintiffs simply do not satisfy any of the factors, which arguably could establish that they have a special interest in the trust. While the Court recognizes the compelling and overriding interest that the grandparents of Trenton Duckett have in the efforts to locate him, that is simply not enough to provide standing to them to pursue an action against a charitable trust and provides absolutely no basis to bring a claim against the father of Trenton Duckett for an equitable accounting of a Charitable Trust in which he is neither the trustee nor a signatory on the bank accounts of the trust.

Accordingly, for these reasons, the Court concludes that there is no possibility that Plaintiffs can establish a claim for equitable accounting against Joshua Duckett. Because there is no possibility of a claim for accounting under Florida law against Joshua Duckett, the Defendants have established that the joinder of Joshua Duckett in this case constitutes fraudulent joinder. Where a party has been fraudulently joined the Court may ignore the citizenship of the fraudulently joined party for purposes of determining whether there is diversity of citizenship. Thus, ignoring the citizenship of Joshua Duckett for purposes of diversity, there is complete diversity of citizenship between all of the Plaintiffs and all of the Defendants in this case and, therefore,

---

[40] Alco Gravure, Inc. v. The Knapp Foundation, 64 N.Y. 2d 458, 465 (N.Y. 1985) (citing Restatement [Second] of Trusts § 391 comment c; 4 Scott, The Law of Trusts § 391, at 3008-09 [3d ed.]; Bogert, The Law of Trusts and Trustees § 414 [2d rev. ed.]). "A multi-factor approach is used to determine whether a party has special interest giving rise to standing to enforce a charitable trust, and the factors include the extraordinary nature of the acts complained of and the remedy sought; the presence of fraud or misconduct on the part of the charity or its directors; the attorney general's availability or effectiveness; the nature of the benefitted class and its relationship to the charity; and subjective, case-specific circumstances." 14 C.J.S. Charities § 69.

Plaintiffs' Petition To Remand To State Court is due to be **DENIED**.[41] Moreover,

because the Court lacks subject matter jurisdiction over claims against Joshua Duckett

the claim for accounting against him is due to be dismissed.

## III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' Petition

To Remand To State Court. (Doc. 10) should be **DENIED** and the Court should dismiss

Joshua Duckett as a party in this case.

**IN CHAMBERS** in Ocala, Florida, on June 18, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[41] The Court also concludes that Plaintiffs' argument that Defendants have failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000 has no merit. This case involves the death of a 21 year old woman and seeks wrongful death damages for funeral expenses, loss of prospective wages and punitive damages. In addition Plaintiffs seek additional damages for intentional infliction of emotional distress. Admittedly, this case concerns events which have received national news coverage and based upon the young age of Melinda Duckett when she committed suicide and measured against verdicts in other Florida cases for wrongful death involving young women in their twenties, it is more likely than not that a favorable verdict in this case would be well in excess of $75,000. (*See,* cases cited by Defendants in Doc. 17, pp. 10-12.)