UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ESTATE OF MELINDA DUCKETT, by and
through her personal representative,
KATHLEEN CALVERT and BETHANN
EUBANK and WILLIAM GERALD
EUBANK, as legal parents of MELINDA
DUCKETT, and as grandparents and next
friends of T.D., a child and M.E., a minor
sibling of MELINDA DUCKETT,

                    Plaintiffs,

-vs-                                                  Case No.  5:06-cv-444-Oc-10GRJ

CABLE NEWS NETWORK LLLP (CNN), a
Delware Corporation, NANCY GRACE,
individually and as an employee/agent of
CNN, JOSHUA DUCKETT,

                    Defendants.

_____/

## **O R D E R**

This diversity jurisdiction wrongful death and intentional infliction of emotional

distress case is before the Court for consideration of Defendants CNN and Nancy Grace's

Dispositive Motion to Dismiss and Incorporated Memorandum of Law (Doc. 37) to which

the Plaintiffs have filed a response in opposition (Doc. 44).  The Plaintiffs have also filed

a Motion to Strike certain materials the Defendants attached to their motion to dismiss,

(Doc. 45), to which the Defendants have responded.  (Doc. 49).  The motions are therefore

both ripe for review, and the Court concludes that the motion to dismiss is due to be

denied, and that the motion to strike is due to be granted.

## Factual Background

The following facts are alleged in the Plaintiffs' Complaint.  (Doc. 5).  Defendant Nancy Grace is an employee and/or agent of Defendant Cable News Network, Inc.[1] ("CNN"), and is the star and moderator of the "Nancy Grace" show which airs on CNN's sister channel, Headline News.

On August 27, 2006, T.D., the two year old child of Melinda Duckett, a resident of Leesburg, Lake County, Florida, went missing and/or was abducted.  On or about September 7, 2006, Ms. Duckett recorded by telephone an appearance for the "Nancy Grace" show to discuss her missing child.  The show was scheduled to air the following day.  On September 8, 2006, hours before the show was to be televised, Melinda Duckett committed suicide.  The Defendants aired Ms. Duckett's interview on the "Nancy Grace" show as scheduled later that evening and referenced and/or replayed the interview several times thereafter.

The Plaintiffs, Melinda Duckett's parents and minor sister and Melinda Duckett's Estate, allege that the conduct of the Defendants in procuring Ms. Duckett's appearance on the "Nancy Grace" show, the manner in which Ms. Duckett was questioned on the show, and the Defendants' decision to air the show following Ms. Duckett's suicide, are all actionable under state law.  More specifically, the Plaintiffs allege in their Complaint that

---

[1]The Plaintiff lists CNN as Cable News Network LLLP (CNN), a Delaware Corporation.  The Defendants state that such an entity no longer exists, and that the proper entity to be sued in this action is Cable News Network, Inc.

the Defendants promised and represented to Melinda Duckett and her personal attorney that her appearance on the show might assist in efforts to find T.D., while their true intention was to "ambush" Melinda Duckett with accusations, questions and verbal assaults intimating that Ms. Duckett had  murdered her own child.

The Complaint further alleges that Nancy Grace and/or her associates and subordinates and producers of the "Nancy Grace" show made a false statement of material fact to Melinda Duckett when they knowingly and fraudulently misrepresented the true purpose of Ms. Duckett's appearance on the show, and that at the time such fraudulent misrepresentations were made, the Defendants knew that Melinda Duckett was in a severe state of mental anguish and distress.  The Plaintiffs allege that despite this knowledge, the Defendants ignored the probability that their conduct would cause Ms. Duckett severe emotional distress and subjected her to outrageous interrogation, fist-pounding, and veiled accusations that she was responsible for her child's disappearance and death.  The Complaint further alleges that this deliberate and outrageous conduct intentionally caused Ms. Duckett severe emotional distress and either caused, or was the proximate cause, of Melinda Duckett's suicide.

With respect to Ms. Duckett's family, the Complaint alleges that the Defendants' decision to air the interview with Ms. Duckett following her suicide as well as to reference and/or re-broadcast the interview was in malicious and contumacious disregard to inflicting severe emotional distress and damage on Ms. Duckett's family.  The Complaint further

3

alleges that as a result of the airing of the Melinda Duckett interview, her family was subjected to media and public harassment, as well as debilitating emotional distress.

## Procedural History

The Plaintiffs filed their original Complaint on November 12, 2006 in the Circuit Court of the Fifth Judicial Circuit In and For Lake County, Florida.  (Doc. 5).  The Complaint alleged four state law claims against the Defendants: (1) a claim by Melinda Duckett's Estate under Florida's Wrongful Death Act, Fla. Stat. § 768.19, premised on the Defendants intentional infliction of emotional distress and Ms. Duckett's resulting suicide; (2) a claim by Melinda Duckett's parents and her minor sister for intentional infliction of emotional distress, premised on the Defendants' initial and continued airing of Nancy Grace's telephone interview with Ms. Duckett; (3) a claim by all Plaintiffs against the Defendants and Joshua Duckett (the father of T.D.)  requesting an equitable accounting of all reward monies and donations made to the T.D. Family Charitable Trust Fund; and (4) a claim of misappropriation of likeness by Melinda Duckett's Estate.

On December 20, 2006, the Defendants removed the case to this Court on the grounds of diversity jurisdiction (Doc. 1).  On January 18, 2007, the Plaintiffs moved to remand to state court, (Doc. 10), and requested leave to amend their Complaint (Doc. 11). The Plaintiffs filed another motion for leave to amend on June 27, 2007 (Doc. 30).  Both motions to amend sought to add claims for equitable accounting and for fraud against Laurie Konnerth, the trustee of the T.D. Family Charitable Trust Fund, and to allege these

claims against Joshua Duckett.  On June 18, 2007, the United States Magistrate Judge issued a report (Doc. 28) recommending that the Plaintiffs' motion to remand be denied under the fraudulent joinder doctrine.  The Court adopted the Magistrate Judge's report on July 16, 2007, denied the motion to remand, denied the Plaintiffs' motions to amend their Complaint, found the Plaintiffs lacked standing to bring a claim for equitable accounting, and dismissed Joshua Duckett from this case (Doc. 35).

On August 30, 2007, in response to the Defendants' motion to dismiss, the Plaintiffs voluntarily withdrew their claim for misappropriation of likeness.  (Doc. 44).  The Court will therefore consider this claim to have been voluntarily dismissed without prejudice, and the only claims remaining are the two claims for intentional infliction of emotional distress against Defendants CNN and Nancy Grace.[2]

### Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."  Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d

---

[2]In their motion papers, both sides appear to argue that the Plaintiffs have asserted a separate claim for wrongful death predicated on fraudulent misrepresentation.  See Doc. 37, pps. 10-13; Doc. 44, pps. 13-14.  The Court does not read the Complaint to include such a claim.  Rather, it is clear from the face of the Complaint that the Plaintiffs have raised a single claim of wrongful death predicated on the Defendants' alleged intentional infliction of emotional distress upon Ms. Duckett, and that the emotional distress was created by a combination of the Defendants' questioning of Ms. Duckett on the Nancy Grace show and the Defendants' earlier representations to Ms. Duckett which convinced her to appear on the show.  The Court will therefore not consider any further arguments with respect to an independent fraudulent misrepresentation claim.

465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  <u>Jackson v. Okaloosa County, Fla.</u>, 21 F.3d 1532, 1534 (11th Cir.1994); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits.  Fed R. Civ. P. 10(c); <u>GSW, Inc. v. Long County, Ga.</u>, 999 F.2d 1508, 1510 (11th Cir.1993).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  <u>Bell Atlantic Corp. v. Twombly</u>, ____ U.S. ____, 127 S.Ct. 1955 (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  <u>Roe v. Aware Woman Center for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

## **Discussion**

### I.    <u>Applicable State Law</u>

The Defendants seek dismissal of both remaining claims against them under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under Florida law for which relief can be granted.  Before the Court can address the Defendants' arguments, the Court must first determine which state's law applies.  While the Defendants contend that Florida law

6

applies, the Plaintiffs suggest in their motion papers that Georgia law may apply the rule of decision.

A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state, in this case Florida.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Grupo Televisa, S.A. v. Telemundo Communications Group, Inc., 485 F.3d 1233, 1240 (2007).  As a preliminary matter, the Court must characterize the legal issue and determine whether it sounds in tort, contract, or property law.  Once the Court has classified the legal issue, it must determine the choice of law rule that the forum state applies to that particular type of issue.  Acme Circus Operating Co., Inc. v. Kuperstock, 711 F.2d 1538, 1540 (11th Cir.1983).  In this case there is no dispute that the claims against the Defendants sound in tort allegedly committed and causing injury in Florida.  Therefore Florida's choice of law rules that apply to tort claims will govern in this case.

Florida has adopted the "most significant relationships test" for causes of action that arise out of a tort.  Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla. 1980); see also Garcia v. Public Health Trust of Dade County, 841 F.2d 1062, 1064 (11th Cir. 1988).  Under the most significant relationships test, "all substantive issues will be determined in accordance with the law of the state having the most significant relationship to the occurrence and the parties. The place of injury still determines which state's law applies, unless some other state has a more significant relationship to the issues." Gonzalez-Gonzalez-Jimenez de Ruiz v. United States, 231 F. Supp. 2d 1187, 1194 (M.D. Fla. 2002) (citing Bishop, 389 So. 2d at 1001, and Garcia, 841 F.2d at 1064-65).

In this case, it is clear from the face of the Complaint that the state having the most significant relationship to the occurrence and the parties is Florida.  The decedent, Melinda Duckett, was a resident of Lake County, Florida.  The Estate of Melinda Duckett is located in Florida.  Melinda Duckett committed suicide in Lake County, Florida.  Thus, the place of injury is clearly Florida.   Moreover, while it is not entirely clear from the face of the Complaint where Ms.  Duckett's telephone interview took place, the Plaintiffs do not suggest that the interview occurred anywhere other than in Florida, or that Ms.  Duckett was outside of Florida when she spoke with the Defendants about appearing on the "Nancy Grace" show.  Instead, the only argument the Plaintiffs posit in support of applying another state's law is to assert that the "Nancy Grace" show is produced in Georgia, and that the location of the show's producers at the time they solicited Ms.  Duckett to appear on the show is unknown at this time.  This is not sufficient to convince the Court that Georgia law should apply to the tort claims in this case.[3]  Accordingly, the Court finds that Florida law will govern the Plaintiffs' two claims for intentional infliction of emotional distress.

II.    Count I - Wrongful Death/Intentional Infliction of Emotional Distress

The Plaintiffs' first claim, which was brought by the Estate of Melinda Duckett under Florida's Wrongful Death Act, Fla. Stat. § 768.19, is premised on a theory of intentional

---

[3]The Plaintiffs' suggestion that Georgia law should apply is somewhat disingenuous where the Plaintiffs chose to file suit in Florida as opposed to Georgia, and where the Plaintiffs' very first claim is explicitly brought under Florida's Wrongful Death Statute, Fla.  Stat. § 768.19.  See Doc. 5, pp.  2, 5, and ¶ 14.  In addition, the Defendants, who are all either residents of Georgia, Delaware, or other states besides Florida, and presumably would be the parties with relationships with other states, agree that Florida law applies.

infliction of emotional distress.[4]  The Plaintiffs contend that the Defendants deliberately and intentionally convinced Melinda Duckett to appear on the "Nancy Grace" show for the sole purpose of badgering and verbally assaulting Ms. Duckett, and inferring that she killed her child, in order to increase broadcast ratings.

In order to state a cause of action for intentional infliction of emotional distress in Florida, the Plaintiffs must show: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Williams v. Worldwide Flight Servs. Inc., 877 So.2d 869, 870 (Fla. 3rd DCA 2004).  See also, Ball v. Heilig-Meyers Furniture Co., 35 F.Supp.2d 1371, 1376 (M.D.Fla. 1999); Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985).  "[T]he issue of whether or not the activities of the defendant rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question ... for the court to decide as a matter of law." Vance v. Southern Bell Telephone Co., 983 F.2d 1573, 1575, n. 7 (11th Cir.1993); Tucci v. Smoothie King Franchises, Inc., 215 F.Supp. 2d 1295, 1303 (M. D. Fla. 2002).

Florida has established a very high standard for claims of intentional infliction of emotional distress, and only in extreme circumstances will courts uphold such claims.

---

[4]Under Florida's Wrongful Death Act, the decedent's estate can only recover where "the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, . . . and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued. . . ." Fla. Stat. § 768.19. Therefore, the Plaintiffs can only proceed on this claim if they can establish an underlying cause of action for which Melinda Duckett could have recovered had she survived.

205f97d34b896a1d

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Metro. Life Ins. Co., 467 So.2d at 278-79.[5]  Emphasizing the stringent requirements of Florida law governing this tort is the fact that only ten (10) reported cases can be found in which a judgment for damages has actually been entered in favor of a successful plaintiff, and affirmed on appeal. Pleading a cause of action for intentional infliction of emotional distress is one thing, avoiding summary judgment or prevailing at trial is quite another.

Here, we are dealing only with a challenge to the sufficiency of the pleadings, which must be considered in light of the extremely lenient "notice pleading" standard applied in federal courts.  See Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the facts sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests.").  Applying this lenient notice pleading standard to the Plaintiffs' Complaint, the Court concludes that the Defendants' motion to dismiss Count I must be denied.  According to the face of the Complaint, the Plaintiffs have sufficiently alleged all of the elements of an intentional infliction of emotional distress claim: (1) the Defendants acted intentionally and/or recklessly when they convinced Ms. Duckett to appear on the "Nancy Grace" show, as well as when they verbally badgered Ms. Duckett on the show and inferred that she was involved in her son's disappearance; (2) the

---

[5]Florida's definition of outrageousness was adopted from Section 46, Restatement (Second) of Torts (1965).  See Metro. Life Ins. Co., 467 So.2d at 278-79.

Defendants' conduct was outrageous, particularly in light of the fact that the Defendants were aware of Ms. Duckett's precarious emotional and mental state; and (3) the Defendants' conduct caused Ms. Duckett severe emotional distress, which resulted in her suicide.  At this stage in the litigation, the Court must take these allegations as true.

The Defendants argue that even if they did engage in the conduct the Plaintiffs accuse them of, it does not rise to the level of "outrageousness" sufficient to establish a claim for intentional infliction of emotional distress under Florida law.  This may well be true, however at this point in the litigation, the record is insufficiently developed to determine whether the Defendants' alleged conduct amounted to extremely outrageous behavior such that the Plaintiffs could recover.  In particular, the Plaintiffs have alleged that at the time the Defendants secured Ms. Duckett's appearance on the show, the Defendants were very much aware that Ms. Duckett was already suffering emotional and psychological stress from the disappearance of her son, and at least one Florida court has recognized that in similar situations, "[t]he potential for severe emotional distress is enormously increased."  Williams v. City of Minneola, 575 So. 2d 683, 691 (Fla. 5th Dist. Ct. App. 1991).[6]  Thus, where the alleged conduct on the part of the Defendants may not be considered outrageous when the victim is of ordinary emotional and mental status, such

---

[6]See also Weinstein v. Bullock, 827 F. Supp. 1193, 1205 (E.D. Pa. 1993) (granting summary judgment where evidence did not demonstrate that defendants knew in advance that plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.").

conduct may become actionable (and liability may exist) when the alleged victim suffers from known emotional and/or psychological trauma.[7]

Given the lack of any record evidence at this point concerning Ms. Duckett's mental state and the Defendants' level of knowledge about it, as well as the absence of any evidence concerning what exactly was said to Ms. Duckett both during the initial conversations with the Defendants' producers and during the taping of the "Nancy Grace" show, the Court simply cannot yet reach a decision as to whether the Defendants' conduct was "outrageous" under Florida law. Determining on the pleadings as a matter of law whether Defendants' alleged conduct is actionable for intentional infliction of emotional distress would therefore be premature.[8]

---

[7]See Restatement (Second) of Torts, Section 46, Comment f (1965) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.").

[8]The Defendants have attached to their motion to dismiss a DVD copy of the September 8, 2006 "Nancy Grace" broadcast, as well as a transcript from the show. The Plaintiffs have moved to strike both items on the grounds that the Plaintiffs did not incorporate by reference either item, and to consider such evidence would convert the Defendants' motion to dismiss into a motion for summary judgment. (Doc. 45). The Court agrees. While there is no doubt that the broadcast of the "Nancy Grace" show will be a crucial piece of evidence going forward in this case, the Plaintiffs did not attach a copy of the show to their Complaint (or any of its attempted amendments), and do not quote from any portions of the broadcast or make any other specific references. See Fed R. Civ. P. 12(d); GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993). Moreover, the Plaintiffs' intentional infliction of emotional distress claims relate to more than just the broadcast itself; they also relate to the conversations between Ms. Duckett and the show's producers, of which there is no record evidence at this time. Thus, in order to consider the Defendants' proffered evidence, the Court would have to give the Plaintiffs an opportunity to submit additional evidence to support their claims. The Parties will have ample opportunity to submit such evidence at the summary judgment stage, after the completion of discovery. To

(continued...)

For the same reasons, the Court cannot dismiss Count I based on the Defendants' argument that Melinda Duckett's voluntary act of suicide is an intervening act which breaks the causal chain for tort liability.  If, as the Plaintiffs correctly state, the evidence establishes that the Defendants' conduct caused Ms. Duckett such severe stress and emotional upheaval that she killed herself in response to an uncontrollable impulse, the Defendants may be subject to liability.  See Nelson v. Seaboard Coast Line Railroad Co., 398 So. 2d 980 (Fla. 1st Dist. Ct. App. 1981).  Again, taking the facts of the Complaint as true, which the Court must at this stage, and in the absence of any record evidence on this point, the Defendants' motion to dismiss Count I shall be denied.[9]

III.    Count II - Intentional Infliction of Emotional Distress Based on Show Broadcast

The Plaintiffs' second claim for intentional infliction of emotional distress is brought on behalf of Melinda Duckett's parents and minor sibling and is predicated on the Defendants' decision to air the telephone interview with Ms. Duckett on the "Nancy Grace" show hours after Ms. Duckett's suicide, and to continue to air report on and/or air the

---

[8](...continued)
consider either the DVD or the transcript at this time would be both premature and inappropriate. The Court will therefore decline to presently convert the motion to dismiss into a motion for summary judgment, will grant the Plaintiffs' motion to strike, and will not consider either the transcript or the DVD in ruling on the Defendants' motion to dismiss.

[9]Contrary to the Defendants' interpretation, this is not a case where the Plaintiffs are alleging that the Defendants had a "special relationship" with Melinda Duckett or a duty to prevent her suicide.  See, e.g. Garcia v. Lifemark Hospitals of Florida, 754 So. 2d 48 (Fla. 3d Dist. Ct. App. 2000); Guice v. Enfinger, 389 So. 2d 270 (Fla. 1st Dist Ct. App. 1980).  Rather, the Plaintiffs have alleged that the Defendants deliberately engaged in activities that caused Ms. Duckett the severe emotional distress that resulted in her suicide - an entirely different theory of liability which cannot be resolved without the benefit of discovery.

13

interview on several other occasions.  According to the Complaint, the Defendants' actions have caused Ms. Duckett's family severe and continued emotional distress for which they have sought psychological counseling.

The Defendants again argue that this claim should not go forward because the alleged conduct is not sufficiently outrageous to be actionable under Florida law.  This presents a much closer question because, whatever their attitude was toward the Plaintiffs, the Defendants had a business purpose protected by the First Amendment in going forward with the broadcasts after Melinda Duckett's death.  However, just as with the claim by Ms. Duckett's Estate, the Court finds that the family's claim cannot be disposed of at the motion to dismiss stage.  As an initial matter, there is no dispute that the Plaintiffs have alleged their *prima facie* case.  And, at least one court in Florida has recognized a claim for intentional infliction of emotional distress brought by a family based on a the treatment of a deceased family member.  See, Williams v. City of Minneola, 575 So.2d 683 (Fla. 5th Dist. Ct. App. 1991) (denying summary judgment where police officers displayed "grotesque" pictures of a family member's dead body).  While the facts in that decision may prove to be more egregious than the facts in this case, the Court cannot make that determination without any record evidence.  As it stands, Florida courts have shown "a particular solicitude for the emotional vulnerability of survivors regarding improper behavior toward the dead body of a loved one, [as well as] special deference . . . to family feelings where rights involving dead bodies are concerned. . . ." Id. at 691.  When dealing with survivors of a decedent, "behavior which in other circumstances might be merely insulting,

14

frivolous, or careless becomes indecent, outrageous and intolerable." Id. at 691, n. 6. Therefore, and in light of the extremely lenient notice pleading standard which the Court must follow at this stage, the Defendants' motion to dismiss Count II shall be denied.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED AND ADJUDGED as follows:

(1)     The Plaintiff's Claim for Misappropriation of Image/Likeness (Count IV) as set forth in the Complaint (Doc. 5), is DISMISSED WITHOUT PREJUDICE;

(2)     Defendants CNN and Nancy Grace's Dispositive Motion to Dismiss and Incorporated Memorandum of Law, (Doc. 37), is DENIED;

(3)     The Plaintiffs' Motion to Strike, (Doc. 45), is GRANTED.  The DVD copy and transcript of the September 8, 2006 broadcast shall be stricken from the court record; and

(4)     The Defendants are directed to file their answers to the Complaint within twenty (20) days of the date of this Order.  Within twenty (20) days from the date of the filing of the Defendants' answers, the Parties are directed to meet for the purposes of preparing and submitting to the Court a Case Management Report in accordance with the requirements of Fed. R. Civ. P. 16, 26 and Local Rule 3.05(c)(2)(B).

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 30th day of July, 2008.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy, Courtroom Deputy