UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ESTATE OF MELINDA DUCKETT,
by and through her personal representative,
KATHLEEN CALVERT, and BETHANN
and WILLIAM GERALD EUBANK,
as legal parents of MELINDA DUCKETT,
and as grandparents and next friends of T.D., a child
and M.E., a minor sibling of MELINDA DUCKETT,

      Plaintiffs,

                                   CASE NO. 5:06-cv-444-WTH-GRJ

vs.

CABLE NEWS NETWORK LLLP (CNN),
a Delaware corporation, NANCY GRACE,
individually and as an employee/agent of CNN,
various unnamed producers of the " Nancy Grace "
Show,

      Defendants.
_____/

## NOTICE OF FILING OF PLAINTIFFS' EXPERT WITNESS DISCLOSURE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE (26)(A)(2)

Plaintiffs hereby give notice of filing of the attached Plaintiffs' Expert Witness

Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(2).

                            Respectfully submitted,

                            DERATANY, SKORUPA & O'HARA, LLP
                            Attorneys for Plaintiff
                            Crystal Tree Office Centre
                            1201 U.S. Highway One, Suite 315
                            North Palm Beach, FL 33408
                            Telephone: (561) 624-7989
                            Facsimile: (561) 627-5734

                            By: /s/ Jay Paul Deratany
                                JAY PAUL DERATANY
                                FL Bar No.: 837880

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the attached, Plaintiffs' Expert Witness Disclosure Pursuant to Federal Rule of Civil Procedure 26(a)(2), was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to **Charles D. Tobin, Esquire,** and **Judith M. Mercier, Esquire,** Holland & Knight LLP, Attorneys for CNN and Nancy Grace, 200 S. Orange Avenue, Suite 2600, Orlando, FL 32801 and 2099 Pennsylvania Ave., N.W., Suite 100, Washington, D.C. 20000 on this 30th day of November, 2009.

DERATANY, SKORUPA & O'HARA, LLP
Attorneys for Plaintiff
Crystal Tree Office Centre
1201 U.S. Highway One, Suite 315
North Palm Beach, FL 33408
Telephone: (561) 624-7989
Facsimile: (561) 627-5734

By: /s/ Jay Paul Deratany
     JAY PAUL DERATANY
     FL Bar No.: 837880
     KARA ANN SKORUPA
     FL Bar No.: 0739561

**Harold J. Bursztajn, MD**
96 Larchwood Drive
Cambridge, MA  02138
Telephone: 617-492-8366
Telefax:    617-441-3195
http://www.forensic-psych.com

Princeton University AB 1972
Harvard Medical School MD 1976

November 30, 2009

Jay Deratany, Esq.
The Deratany Firm
221 North Lasalle Street, Suite 2200
Chicago, IL  60601

Kara Skorupa, Esq.
Deratany, Skorupa & O'Hara, LLP
Crystal Tree Office Centre, Suite 315
1201 U.S. Highway One
North Palm Beach, FL  33408

Re:    **Estate of Melinda Duckett v. Cable News Network, Inc.**

**Preliminary Forensic Psychiatric Opinion**

Dear Mr. Deratany and Ms. Skorupa,

This case pertains to Melinda Duckett (DOB: 8/14/85), who committed suicide by shooting herself in the head on September 8, 2006.  What follows is a Preliminary Forensic Psychiatric Opinion as to whether the actions of Nancy Grace and her staff before and during the interview with Melinda Duckett conducted on September 7, 2006 and televised the following day (after Ms. Duckett's death) on Cable News Network (CNN) contributed substantially to causing the suicide of Melinda Duckett and whether the actions of Nancy Grace, her staff, and CNN have contributed to causing pain and suffering for members of Melinda Duckett's family.

## I.   Materials Reviewed and Analyzed to Date

A.  Complaint and Amended Complaint (24pp)
B.  Standard for Liability and Causation (1p)
C.  Mental Health Records of Melinda Duckett (189pp)
D.  Resume Melinda Duckett (3pp)
E.  Opinion Andrew E. Slaby, MD, PhD, MPH (6pp)
F.  Plaintiff's Notice of Serving Answers to Defendant CNN's First Set of Interrogatories (105pp)
G.  Medical Records Chris Martin, MD (28pp)
H.  Medical Records Niagara Falls Memorial Medical Center (9pp)
I.  Medical Records Michael Caballero LCSW (43pp)
J.  Medical Records The Center for Family Therapy (21pp)
K.  Will of Melinda Duckett (38pp)
L.  Records Lockport District School (70pp)
M.  Video Nancy Grace Program (00:42:14)
N.  Divorce Proceedings and Correspondence (252pp)
O.  Writings Melinda Duckett (3pp)
P.  Records Family & Children's Service of Niagara, Inc. (22pp)

## II. Preliminary Opinion

A.   Based on my review and analysis of the data made available to me to date, it is my preliminary forensic psychiatric opinion that there is a reasonable likelihood that Melinda Duckett's experience with Nancy Grace and her associates at CNN, including the interview of September 7, 2006 about the disappearance of her child, Trenton Duckett, substantially diminished her capacity to protect herself from suicidal ideation and thus was a substantial contributing cause of her suicide the following day.   I expect that as discovery proceeds and additional data become available, this preliminary opinion will be supplemented and the degree of certainty to which I hold it may be revised. Particularly salient will be the determination by the finder of fact of whether, as alleged, Melinda Duckett was misled before the interview that its purpose was to help find her child and whether she was not informed that she could be treated publicly, on the air, as a suspect in his disappearance, and thus was denied the opportunity to give or withhold informed consent to the interview. Specific considerations that form the basis of this preliminary opinion are as follows:

1.   A viewing of that portion of the interview which was aired on Nancy Grace's television show reveals a distraught young woman who is subject to repeated and increasingly sharp questioning by a hostile interviewer who displays increasing suspicion and anger towards Ms. Duckett.   As Ms. Grace's tone of hostile interrogation intensified, Melinda Duckett became increasingly upset and began to seem disorganized.

2.   Nancy Grace, who reportedly is an experienced interviewer and prosecutor, spoke with authority and struck a highly accusatory tone in interviewing Melinda Duckett.

3.   Nancy Grace's interview included unfavorable comparisons to Melinda Duckett's ex-husband Joshua Duckett, who was Trenton's father and who had been involved in highly acrimonious mutual accusations with Melinda Duckett.

4.   Reports from Melinda Duckett's grandparents indicate that Melinda seemed much more overwhelmed following the interview than she had previously.

5.   Ms. Duckett's suicide came after the interview and before the airing of the interview.   The timing is consistent with an increased sense of despair following the interview and a fear of the effects of its broadcast.

6.   Ms. Duckett's suicide notes reflect a concern for how the public perceived her.   While she states she doesn't want to focus on individual "wrong

2

doings," she states she hopes some individuals will realize their "wrong doings." She also laments that public "focus came off of my son," that the public "created rumors and twisted words," and that she was faced with "ridicule and criticism." She also states that she was pushed too far and that she was misunderstood.

a.  While some or all of these perceptions may have existed before the interview, it is reasonable to infer that the interview foreseeably exacerbated and reinforced these feelings.

b.  The data I have reviewed and analyzed to date are consistent with a reasonable inference of likelihood that Melinda Duckett expected that the interview with Nancy Grace would focus on assisting in the search for her son. Instead, there is a reasonable inference of likelihood that she experienced the interview as an attack. Her reports that she was relying on lawyers' advice regarding taking a lie detector test were rejected and she felt she was treated with criticism, hostility, and a tone of condemnation by Nancy Grace.

c.  While questioning alone is normally not expected to drive a person to suicide, an interviewer skilled in interrogation can rapidly create emotional stress that can exacerbate preexisting emotional vulnerability. This is compounded by public (e.g., on the air) interviews where a distraught person's sense of shame is likely to be exacerbated.

d.  There is a reasonable likelihood that this stress was heightened by Melinda's age, the presence of a charismatic authority figure, and the severe stress Melinda was experiencing at the time. The possibility that she either had killed her child (possibly accidentally) and/or was a mother in grief for her missing or dead child made her foreseeably highly vulnerable to the added stress of an unexpectedly hostile public interrogation.

e.  It is my current understanding, based on the reports of family members, that Melinda looked forward to the interview with Nancy Grace, anticipating that the interview would be focused on publicizing Trenton's disappearance so that people around the country would be alerted in the event that he turned up. If that is determined to have been the case, then there is a reasonable likelihood that the actual interview was made doubly frightening and demoralizing by Melinda's disappointment in finding the focus turning away from her son, as well as by her sense of betrayal that the interview she thought might help her find her son became what she felt to be a public attack on her.

3

7. The potential effects of the interview were not merely limited to those caused by its taking on the qualities of an interrogation. In addition, the interview was to be broadcast on national television, whose audience would see Melinda Duckett treated with hostility and harsh criticism, in an accusatory tone, by an imposing authority figure. The importance of this aspect of the traumatic experience of the interview is underlined by Melinda's suicide note addressing the "public."

B. While I will rely on further discovery to provide a fuller picture for the finder of fact to determine what Nancy Grace and CNN staff knew about Melinda Duckett at the time of the interview, it is reasonable to infer that it was common knowledge that Melinda was a young mother under extraordinary stress at the time. Melinda was also estranged from Joshua Duckett, who was to be on the show, thereby adding to Melinda's stress.

1. Even if there were strong grounds for suspicion that Melinda Duckett was criminally involved in Trenton's disappearance, that possibility had little or no bearing on the likelihood that Melinda Duckett would be emotionally fragile at that time.

2. Data obtained in discovery will be analyzed for corroboration that Nancy Grace is an experienced prosecutor and skilled interviewer. It is a reasonable inference, to be corroborated by discovery, that an experienced prosecutor and gifted interviewer is likely to have had knowledge and experience regarding the emotional effects of interrogation on a suspect, especially when the interrogation was to be carried out, without due warning, on national television. It will be helpful in discovery to learn what experience Nancy Grace has had with the emotional effects of interrogation, particularly with suspects who committed or attempted suicide or were put on suicide watch following interrogation.

3. High levels of emotional upset, stress, and uncomfortable social exposure are a foreseeable outcome of such questioning. Suicide, while not predictable, is a foreseeable risk under situations of stress, humiliating public exposure, and emotional turmoil, particularly in vulnerable individuals such as Melinda Duckett was by reason of her loss of her child.

4. Moreover, if it is determined by the finder of fact that the nature of the interview was misrepresented to Melinda Duckett before the fact (i.e., that she was told that the purpose of the interview was to help find her child and was not informed that she could be treated as a suspect in his disappearance), then it is reasonable to infer that such misrepresentation foreseeably compounded her prior emotional vulnerability and diminished her capacity to protect herself from suicidal ideation, as often occurs in parents feeling grief or remorse over the loss of a child. In that event, her

4

having been denied the opportunity to give or withhold informed consent to the interview was foreseeably a contributing cause of the hopelessness and helplessness that diminish a grieving person's capacity to protect herself from suicidal ideation.

C.  In light of the reports of emotional stress and ongoing psychiatric treatment experienced by Melinda Duckett's sister, parents, and grandparents, there is a reasonable inference of likelihood, pending further discovery, that they have undergone considerable stress, grief, and suffering resulting from Melinda's suicide, foreseeably exacerbated by the fact that the suicide, even if committed in the midst of grief for her child or even remorse for the child's accidental or intentional death, came on the heels of her being publicly accused and humiliated.  Moreover, if it is determined that the nature of the interview was misrepresented to Melinda and that her family members subsequently became aware of that fact, then there is a reasonable inference of likelihood that their awareness of such misrepresentation has further exacerbated their grief.

1.  While there were difficulties in the relationship between Melinda and her parents, her note to them at the time of the suicide indicates strong existing emotional ties.

2.  When parents and children are estranged, there is generally hope for reconciliation.  Where they are separated, there is generally hope for reconnection.

3.  If it is determined by the finder of fact that the defendants, as alleged, failed to obtain Melinda's parents' consent to the repeated airing of the interview tape after her death, then it was foreseeable that such unauthorized use of the videotape of their daughter's traumatic interview would contribute substantially to their feeling helpless and not in control in matters of the greatest import to their private lives while they were grieving over their daughter's death.

4.  While the available therapy notes are strong indicators of emotional suffering, grief and trauma interviews and evaluations of all surviving parties claiming pain and suffering will be helpful for obtaining a precise assessment of the severity and extent of their suffering and of the proportional contribution to their suffering made by the defendants' actions and omissions, as distinct from other stressors and losses.

D.  If it is determined by the finder of fact that Nancy Grace and her staff were or should have been cognizant of the effects that negative exposure on her television show can have on the lives of those interviewed and on the public— particularly, the outcry, anger, and outrage foreseeably directed against those who are portrayed in a highly negative light on her show--then the pain

5

suffered by Melinda, whose child was lost, and her family was highly foreseeable by the defendants, especially if it is determined that they failed to inform Melinda of the true nature and purpose of the interview.

E. Dr. Andrew E. Slaby's opinion, as formulated in his report of September 1, 2009, rests on an evaluation that is methodologically unreliable for forensic purposes. Dr. Slaby opines with a level of certainty and generality not supported by the data available at this stage, pending further discovery. Moreover, the bases of his opinion are often unstated or inadequate to support his sweeping conclusions, and he gives insufficient consideration to alternative hypotheses.

    1. Dr. Slaby appears to be stating that there are only three potential causes of suicide, without allowing at all for other possible causes. He further identifies these causes as inherent personality "traits," not as emotional states that can be brought about by stress, loss, or traumatic experience. Thus he asserts, "Suicide is caused by depression, hopelessness, and impulsivity. Such traits can be very difficult to recognize and gauge."

    2. Dr. Slaby claims that "Melinda Duckett did not suicide because of her interview on the *Nancy Grace* program, as the questions Ms. Duckett was asked on the program were not a trigger to her suicide."

        a. Here and elsewhere he narrowly and abstractly addresses the issue of whether interview questions themselves can cause suicide. He does not address the intrusive questioning, the unexpectedly accusatory statements, or the manner and tone in which Nancy Grace spoke to Melinda Duckett. Nor does he consider the possibility that Melinda experienced betrayal and shock when the interview turned out to be other than what she reportedly had been led to expect, or that her capacity to protect herself from suicidal ideation while in grief or remorse was thereby diminished.

        b. Furthermore, Dr. Slaby fails to address the broader context of the interview, including the fact that it would be broadcast nationally.

        c. He does not address the question of whether or not the interview was conducted in such a way that it appeared that Nancy Grace believed Melinda was guilty and was focusing righteous anger at Melinda. Nor does he address the reasonable likelihood that Melinda may have become frightened that this inflammatory presentation would arouse public anger against her.

        d. These oversimplifications point to an underlying deficiency of Dr. Slaby's data analysis and opinion formulation, which is his failure to distinguish between predictability and foreseeability. Dr. Slaby notes that suicide in a given instance is not predictable in a determinative sense. However, the

6

question at issue is whether Melinda Duckett's suicide was a foreseeable risk, a risk made more likely by the defendants' actions and omissions.

3.  In arguing that Nancy Grace could not have known or suspected that Melinda Duckett was a suicide risk, Dr. Slaby disregards the possibility that as a prosecutor Nancy Grace had experience with suspects who were placed on suicide watch following interrogation or after they were first treated as suspects rather than simply as witnesses, or that Nancy Grace had experience with suspects who committed or attempted suicide following interrogation or after they were first treated as suspects rather than simply as witnesses.

    a.  Furthermore, Dr. Slaby does not address the question of whether or not Nancy Grace or her staff would or could have known that such public questioning would likely be stressful or painful to a young woman whose child was missing.

4.  Dr. Slaby diagnoses Melinda Duckett with borderline personality traits and sociopathic tendencies without sufficient diagnostic evaluations to provide clear support for these diagnoses. He has not conducted a forensic psychiatric autopsy to make a diagnosis. He then makes the presumptive claim that "she lied with impunity to all who surrounded her" even while he raises the question of borderline personality traits, which could have made her more likely on occasion to fragment, dissociate, and become psychotic. Thus, he fails to perform a differential diagnosis with respect to the etiology of her contradictory statements.

5.  Dr. Slaby reports as fact that Melinda sent a faked threatening e-mail from her husband's MySpace account without providing data corroborating that she had done so.

6.  Dr. Slaby treats reports that Melinda denied sexual abuse to some of her treaters despite having been sexually abused as a child, that she did not mention prior psychiatric treatment to some of her clinicians, and that she made an effort to "look good" when under mandatory psychiatric scrutiny as evidence of sociopathic traits. In doing so, he does not consider any non-sociopathic explanations for these behaviors. In my experience, it is not rare for patients who score lower than the average person on measures of sociopathy to resist disclosing abuse or to minimize or deny their mental health problems.

7.  Dr. Slaby notes that *"The personal history, family history, substance-abuse history, medication history, surgical and medical history, past psychiatric history and mental status exam and treatment course is the responsibility of a trained physician. To my understanding, CNN's producers, interviewers, and Nancy Grace do not have and would not be expected to have this training. Therefore, neither Nancy Grace nor CNN could have known*

7

*whether Melinda was depressed, hopeless or impulsive.*"  While he states that they lack the training, he does not address whether or not Nancy Grace or staff members involved in the interview had obtained information from other sources which indicated that Melinda was "depressed, hopeless or impulsive" or whether they had obtained any other information about Melinda or her history that might have indicated increased vulnerability.

a.    Such information might include her reported history of impulsive cutting or other impulsive acts, the fact she had been adopted from Korea, or any indications that she had already felt under duress and under suspicion as the investigation into Trenton's disappearance progressed.

b.    Moreover, Dr. Slaby fails to consider any likelihood that Melinda, were she suffering from grief or remorse regarding her lost child, was foreseeably likely to be vulnerable to suicidality, and that her capacity to protect herself from the hopelessness and helplessness which can lead to suicidality in the face of loss, pain, and grief would be foreseeably diminished by public humiliation.

c.    Dr. Slaby also fails to explore whether or not the powerful negative emotional impact of the interview by Nancy Grace would have been foreseeable.   It is foreseeable that a young mother with a small child missing might be anxious and easily upset by a highly accusatory interview which was to be aired nationally.

d.    Dr. Slaby appears to be either referring to a transcript or willfully ignoring Nancy Grace's tone and behavior in his analysis.  Thus he states, "The questions directed to Melinda by Nancy Grace on the telephone interview were similar to those asked of Melinda's husband, Joshua Duckett. They sought the information about where Trenton Duckett was last seen and the parents' cooperation with law enforcement, including polygraph examinations. While Joshua cooperated and answered the questions, Melinda was less than forthcoming, and appeared to be uncooperative, evasive, and inconsistent. *Nancy Grace's questioning naturally followed Melinda's evasiveness and inconsistencies*. Indeed, it is reasonable to assume that Melinda faced many of the same questions in more detail from police and law enforcement investigators, yet these questions did not cause her to die by suicide."

  i.    Dr. Slaby ignores the huge contextual distinction between a police interrogation conducted in *private* and a nationally televised *public* interrogation.

  ii.   Dr. Slaby seems to be referring only to the content of the questions, not the manner in which they were delivered  - the anger, the forcefulness, the physical gestures such as banging on the table.

8

iii. Furthermore, Dr. Slaby concludes that Nancy Grace's questioning naturally followed "Melinda's evasiveness and inconsistencies." However, he does not indicate whether he has done any research to determine whether the hostile line of questioning had not already been prepared by Nancy Grace and her team prior to the interview. He gives no indication of having researched their preparation for the interview.

iv. Dr. Slaby seems to leap to an unjustified conclusion when he writes, "the evidence demonstrates that Melinda may have been preparing to die long before her telephone interview on *Nancy Grace*." He does not mention that Melinda Duckett's will was an organized document with a long-term framework, including provisions should others predecease her – the kind of framework which is inconsistent with a formed suicide attempt. He also appears to be taking the implicit position that a psychologically healthy mother, even one estranged from the child's father, would not have a will, without considering the evident alternative hypothesis that a mother's making a will could simply reflect a concern to provide properly for her child in the event of her death. In addition, he disregards the brevity and content of Melinda's suicide notes, which include statements about time being short, an apology for the brevity of a note, and her statement that "this is a last minute idea."

v. Also, even if Melinda had been considering suicide, as do many parents feeling grief or remorse after the loss of a child, her capacity to protect herself from suicide was not diminished until after her apparently unanticipated public exposure on the Nancy Grace show.

8. Dr. Slaby refers to Melinda Duckett as an actress in pornographic videos without documenting any attempt to analyze her role in what he refers to as pornography. This includes determining whether she was acting in a scripted role or whether she was taped surreptitiously in an intimate personal situation, which I understand to be a matter of factual dispute.

9. I largely concur with Dr. Slaby's analysis that Melinda's suicide is a cause of her parents' grief and guilt. However, Dr. Slaby fails to consider the reasonable hypothesis that the parents' and other family members' grief and suffering have been exacerbated by the repeated replaying of Nancy Grace's interview with Melinda.

a. The precise extent to which the allegedly unauthorized replaying of the video is a cause of pain and suffering to Melinda's sister, parents, or grandparents can best be determined by forensic psychiatric interviews with these family members.

9

### III. Summary of Preliminary Opinion

It is my opinion that there is a substantial likelihood that Melinda Duckett's capacity to protect herself from transient suicidal ideation, as can foreseeably occur in parents who have lost their child for whatever reason and are in the midst of grief and/or remorse, was substantially diminished by the helplessness and hopelessness which can accompany unanticipated public accusations and humiliation. Therefore, pending additional discovery and the findings of fact noted above, her apparently unanticipated public humiliation on the nationally televised program in question was a substantial contributing cause of her suicide. In addition, while their daughter's suicide and the loss of their grandson are each substantial causes of Melinda's parents' grief, their suffering is likely to have been compounded by the repeated airing of the videotape of Melinda's interview subsequent to her suicide.

### IV. Supplementation of Opinion

This is a preliminary opinion which I expect to be supplemented by interviews with Melinda's sister, parents, and grandparents as well as by further discovery, including depositions of key individuals. In order to complete a forensic psychiatric evaluation and to formulate a final opinion on the questions at issue, it will be helpful to review and analyze the following additional materials:

A. Forensic psychiatric interviews and assessments of Melinda's sister, parents and grandparents.
B. Review of all of Nancy Grace's and CNN's records of contacts and communications with Melinda Duckett.
C. Any and all records, whether written, taped, or otherwise recorded, in the possession of CNN, Nancy Grace, or their present or former staff members regarding Melinda Duckett.
D. Any records of signed, written, or oral agreements with Melinda Duckett or her lawyer or other agents regarding the interview with Nancy Grace and the use of the interview material.
E. Any and all materials and notes gathered or produced in preparation for that interview.
F. Any depositions taken in this case, including any deposition of Nancy Grace, her staff members, or CNN staff members.
G. Any information relevant to resolving whether Melinda Duckett was, as Dr. Slaby reports, an "actress in pornographic movies."

### V. Curriculum Vitae

Please see attached CV.

10

**VI. Previous Testimony**

Please see attached list of Deposition and Testimony for the last 4 years

**VII. Compensation**

I am reimbursed for forensic work at a rate of $500 per hour.

Yours very truly,

Harold J. Bursztajn, MD

**Harold J. Bursztajn, MD**
www.forensic-psych.com
96 Larchwood Drive
Cambridge, MA  02138
Telephone: 617-492-8366
Fax:  617-441-3195

Associate Clinical Professor
BIDMC Psychiatry of
Harvard Medical School
harold_bursztajn@hms.harvard.edu



# CURRICULUM VITAE

## PERSONAL INFORMATION

- Born November 18, 1950
- Married

## EDUCATION

- 1968: Diploma, Eastside High School, Paterson, NJ
- 1972: A.B. Princeton University, Princeton, NJ
- 1977: M.D. Harvard Medical School, Boston, MA

## POSTDOCTORAL TRAINING

- Internships and Residencies:
  - 1977-1978: *Resident in Pediatrics*, Children's Hospital Medical Center
  - 1978-1982: *Clinical Fellow in Medicine,* Massachusetts General Hospital Ambulatory Screening Clinic
  - 1979-1982: *Resident in Psychiatry*, Massachusetts Mental Health Center
  - 1981-1982: *Chief Resident*, Program in Psychiatry and the Law, Massachusetts Mental Health Center
- Fellowships and Other Education:
  - 1975-1976: *Special Fellow*, Department of Preventive and Social Medicine, Harvard Medical School
  - 1978-1980: *Research Fellow*, Division of Family Medicine and Primary Care, Harvard Medical School
  - 1981: *Special Student*, Harvard Law School
  - 1981: *Candidate*, Boston Psychoanalytic Institute
  - 1989: *Advanced Candidate*, Boston Psychoanalytic Institute
  - 2005: *Special Graduate,* Boston Psychoanalytic Institute

## LICENSURE AND CERTIFICATION

- 1978: Massachusetts, #43038
- 1982: New Hampshire, #6572
- 1984: American Board of Psychiatry and Neurology, #26278
- 1994: American Board of Psychiatry and Neurology Added Qualifications in Forensic Psychiatry, #38
- 2001: National Institute of Health Office of Human Subjects Research computer-based training course on the Protection of Human Research Subjects, #979405050
- 2001-2002: Medical Care Ombudsman, Medical Care Management Corporation (expert, objective and independent review in cases of informed medical decisions in all domains of medicine or non-profit agency)

ACADEMIC APPOINTMENTS

- 1982-1984: *Clinical Instructor*, Department of Psychiatry, Harvard Medical School
- 1984-1990: *Assistant Clinical Professor*, Department of Psychiatry, Harvard Medical School
- 1990-: *Associate Clinical Professor*, Department of Psychiatry, Harvard Medical School

HOSPITAL APPOINTMENTS

- 1978-1979: Metropolitan State Hospital, Waltham, MA
- 1979-1982: Massachusetts General Hospital, Boston, MA
- 1982-1986: Hampstead Hospital, Hampstead, NH
- 1985-: Massachusetts Mental Health Center, Boston, MA
- 1986-: Mount Auburn Hospital, Cambridge, MA
- 1989-: Beth Israel Hospital, Boston, MA

OTHER PROFESSIONAL POSITIONS AND MAJOR VISITING APPOINTMENTS

- 1968-1972: *Health Consultant*, Model Cities Program, Paterson, NJ
- 1978-1979: *Acting Medical Director*, Concord Unit, Metropolitan State Hospital
- 1983-: *Co-Founder*, Program in Psychiatry and the Law of Harvard Medical School Department at the Massachusetts Mental Health Center
- 1985 (July): *Acting Medical Director*, Hampstead Hospital, Hampstead, NH
- 1994: *Consultant,* National Institutes of Health, Bethesda, M.D.

AWARDS AND HONORS

- 1968-1972: University Scholar, Princeton University
- 1972: Phi Beta Kappa
- 1972: magna cum laude, Department of Philosophy, Princeton University
- 1977: cum laude Honors Thesis, Harvard Medical School
- 1981: Co-winner, Solomon Award, Massachusetts Mental Health Center
- 1983: Second Place, Solomon Award, Massachusetts Mental Health Center
- 1998: Honorary mention, Article: Medical Negligence and Informed Consent in the Managed Care Era, The American College of Physician Executives
- 2002: Nominated as Candidate for President of the Harvard Medical School Alumni Association by Harvard Medical School Alumni
- 2002: Twenty-Five Years at Harvard University, Service Recognition Certificate
- 2003: Harvard Medical School Alumni Council Representative to Harvard University Alumni Directors.
- 2003-2007: Mentor for Harvard Medical School Academy Mentored Student Casebook Project
- 2003: External Member, Dissertation Committee, Boston College School of Nursing Graduate Programs
- 2005: Named to Best Doctors of America list
- 2006: Included in *Who's Who in American Education, 2006-2007*
- 2006: Faculty Advisory Board of Vision at Harvard

- 2006: Nominee, Cynthia N. Kettyle Teaching Award
- 2006: Harvard Medical School Prize for Excellence in Teaching (Years 3 & 4)
- 2006: Included in *Guide to America's Top Psychiatrists, 2006* by the Consumers' Research Council of America
- 2006: Certificate of Appreciation for exemplary leadership and uncommon dedication to advancing the liberal arts and sciences, Phi Beta Kappa Society
- 2007: Nominee, Harvard Medical School Prize for Excellence in Teaching (Years 3 & 4)
- 2007: Nominee, Cynthia N. Kettyle Teaching Award
- 2007: Nominee, William Silen Lifetime Achievement in Mentoring Award
- 2008: A. Clifford Barger Excellence in Mentoring Award
- 2008: Project Advisor for Harvard Medical School Academy Mentored Student Casebook Project
- 2008: Nominee, Harvard Medical School Nominee for the AAMC's National Humanism in Medicine Award

COMMITTEE ASSIGNMENTS

- 1972-1977: Recruiter, socioeconomically disadvantaged students, Harvard Medical School
- 1974-1976: Harvard Medical School Admissions Committee, Subcommittee II, student member
- 1974-1977: Boston Alumni School Committee of Princeton University
- 1982-1986: Peer Review Committee, Hampstead Hospital, Hampstead, NH
- 1984: International Advisory Committee, International Congress on Psychiatry, Law and Ethics, Israel
- 1988: Campaign for the Third Century Committee, Harvard Medical School
- 1988-1989: Harvard Medical School Admissions Committee, Subcommittee II, faculty member
- 1988-1989: Ethics Committee, Mount Auburn Hospital
- 1990: Committee on Institute Analysis, Boston Psychoanalytic Institute
- 1990: Massachusetts Board of Registration, Medicine, Consultant and Supervisor
- 1992: Consultant, Emergency Room and Hospital Medical Directors
- 1996: Rappeport Fellowship Committee, American Academy of Psychiatry & the Law
- 1997: Subtaskforce on Competency to Stand Trial, American Academy of Psychiatry and the Law
- 1998: Advisory and Expert Panel Member, State Justice Institute (SJI) Benchbook Project on Psychiatric and Psychological Evidence, American Bar Association
- 1999: Advisory Board, The International Center for Health Concerns
- 1999-2001: Gender Issues Committee, American Academy of Psychiatry & the Law
- 2000-2001: Harvard Medical School Dean's Council Member
- 2000-2001: Harvard Medical School Class of 76' 25th Class Reunion. Scientific Symposium Committee, Chairman
- 2000-2001: Harvard Medical School Class of 76' 25th Class Reunion. Reunion Committee
- 2000-2001: Harvard Medical School Class of 76' 25th Class Reunion. Reunion Gift Committee
- 2000-2005: Harvard Medical School Dean's Council Member
- 2000: Flaschner Judicial Institute Scientific Advisory Panel

3

- 2000: Program Standards Committee (PSC) for the Department of Veterans Affairs (VA) Human Research Protection Accreditation Program (VAHRPAP), National Committee for Quality Assurance
- 2000-2002: Ethics Committee, American Academy of Psychiatry and the Law
- 2000: St. Jude's Hospital Dinner Committee
- 2000: Harvard Hillel Carl Sloane Dinner Committee
- 2000-: Princeton University Admissions Committee, Alumni Interviewer for New England
- 2002-2005: Commissioner, American Bar Association Commission on Mental Health & Disability Law
- 2003: Member, Research Ethics Subcommittee of the Committee on Scientific Activities of the American Psychological Association
- 2004-2006: Harvard Alumni Association Graduate Schools and Continuing Education Committees
- 2004-2006: Harvard Medical School Alumni Council Subcomittee on Student Indebtedness
- 2004: American Bar Association Expert Witness Committee
- 2005: Harvard Medical School Harvard Center for Neurodegeneration & Repair
- 2005: American Bar Association Healthcare Litigation & Risk Management Interest Group Substantive Webmaster
- 2006: Scientific Advisory Board Member, International Forensic Medicine Association, Inc., (IFMA)
- 2006: Scientific Advisory Board Member, S2 Security Systems
- 2006: Doris Duke Charitable Foundation Clinical Research Fellowship Mentor
- 2007-: Senior Associate, The Harvard International Negotiation Initiative at the Program on Negotiation at Harvard Law School
- 2007-2008: Harvard Medical School Dean's Council Member
- 2008: Boston Psychoanalytic Society and Institute Building and Budget Explorations Committee Program Budgeting Subcommittee
- 2008-: Member, International Academy of Law and Mental Health Scientific Committee

COMMUNITY SERVICE

- 1991: Charter Supporter, United States Holocaust Memorial Hospital
- 1992: Discrimination and Workplace Violence Prevention
- 1998: Physicians for Human Rights
- 2000: Voluntary Physician Network Member, Community Health Access Project (CHAP), Boston Jewish Medically Uninsured Project (BJMUP)
- 2000: Medical Care Ombudsman Program Member, Medical Care Management Corporation
- 2000: Atrium School, presentation at Celebration of Science, Math and Technology
- 2001: Contributor, Boston Medical Center, The Grow Clinic for Children
- 2005: Contributor – Shady Hill School
- 2005: Conference Advisory Committee, YIVO

MAJOR RESEARCH INTERESTS

1. Psychiatry, medical decision making, ethics, and the law

4

2. Informed consent and risk management
3. Trauma and the life cycle
4. Forensic neuropsychiatric evaluation of disability and diminished capacity

PRINCIPAL CLINICAL, HOSPITAL SERVICE RESPONSIBILITIES AND
PROFESSIONAL ACTIVITY

- Presently: Private Clinical Practice, Cambridge, MA
- Consultant to attorneys, clinical practice and institutions
- *Co-Director*, Program in Psychiatry and the Law of Harvard Medical School
  Department at the Massachusetts Mental Health Center

TEACHING EXPERIENCE

- 1982-1983: Psychiatric Decision-Making Seminar, Harvard Medical School Core
- 1982-1989: Psychiatry, the Law, and the Practice of Medicine: North House Seminar
  113, Harvard  University
- 1982-: Ethics Rounds, Massachusetts Mental Health Center, New England Deaconess
  Hospital, Mount Auburn Hospital
- 1983-: Program in Psychiatry and the Law Research Seminar, Massachusetts Mental
  Health Center, Co-Director
- 1991: Extension Division, Boston Psychoanalytic Institute: Clinical Ethics, Risk
  Management, and the Psychoanalytic Perspective

EDITORIAL

- 1988: Editorial Board - Adult Development, Book Review Board of the American
  Journal of Psychotherapy
- 2002: Editorial Advisory Board Member to the Mental & Physical Disability Law
  Reporter, American Bar Association
- 2005: American Bar Association Bioethics Journal
- 2007: Chairperson Psychiatric Times Special Bonus Edition on Clinical Psychiatry &
  The Law
- Occasional Article, Book and Video Reviewer:
    - American Journal of Psychiatry
    - Archives of Internal Medicine
    - Bioscience
    - Boston Psychoanalytic Society Newsletter
    - Contemporary Psychiatry
    - Evidence-Based Mental Health
    - The Forensic Examiner
    - General Hospital Psychiatry
    - Hospital and Community Psychiatry
    - Journal of the American Academy of Psychiatry and the Law
    - Journal of the American Medical Association
    - Journal of Child and Adolescent Psychopharmacology
    - Journal of Clinical Ethics
    - Journal of Clinical Psychiatry
    - Journal of Experimental Social Psychology
    - Journal of General Internal Medicine

- Journal of Health Politics, Policy and Law
- Journal of Women's Health
- The Lancet
- Medical Care
- Medical Decision Making
- Merloyd Lawrence Books: Perseus Books
- New England Journal of Medicine
- Oxford Medical Publications
- Patient Care
- Psychiatric Services
- Routledge, Chapman & Hall: Methuen Inc.

- Occasional Consultant to:
  - The Practice Television Series (2000-2001)
  - The Discovery Channel Education Programs (2001-2003)
  - National Public Television, Washington, DC (2002)
  - CNN (2004)
  - Court TV (2005)

- Peer Reviewers:
  - British Medical Journal
  - Journal of General Internal Medicine

BIBLIOGRAPHY

Original Reports and Commentary

1. Bursztajn HJ. The role of a training protocol in formulating patient instructions as to terminal care choices. J Med Educ. 1977; 52:347-348.

2. Bursztajn HJ, Hamm RM. Medical maxims: two views of science. Yale J Biol Med. 1979; 52:483-486.

3. Bursztajn HJ, Hamm RM. The clinical utility of utility assessment. Med Decision Making. 1982; 2:162-165.

4. Wulsin LR, Bursztajn HJ, Gutheil TG. Unexpected clinical features of the Tarasoff decision: the therapeutic alliance and the "duty to warn." Am J Psychiatry. 1983; 140:601-603.

5. Gutheil TG, Bursztajn HJ, Hamm RM, Brodsky A. Subjective data and suicide assessment in the light of recent legal developments. Part I: Malpractice prevention and the use of subjective data. Int J Law Psychiatry. 1983; 6:317-329.

6. Bursztajn HJ, Gutheil TG, Hamm RM, Brodsky A. Subjective data and suicide assessment in the light of recent legal developments. Part II: Clinical uses of legal standards in the interpretation of subjective data. Int J Law Psychiatry. 1983; 6:331-350.

7. Gutheil TG, Bursztajn HJ, Brodsky A. Malpractice prevention through the sharing of uncertainty: informed consent and the therapeutic alliance. N Engl J

Med. 1984; 311:49-51. Reprinted in 'Grand Rounds on Medical Malpractice' article 3.2, p.131-133.

8.  Bursztajn HJ, Hamm RM, Gutheil TG, Brodsky A.  The decision-analytic approach to medical malpractice law: formal proposals and informal syntheses. Med Decision Making. 1984; 4:401-414.

9.  Hamm RM, Clark JA, Bursztajn HJ.  Psychiatrists' thorny judgments: describing and improving decision-making processes. Med Decision Making. 1984; 4:425-447.

10. Bursztajn HJ, Barsky AJ.  Facilitating patient acceptance of a psychiatric referral.  Arch Intern Med. 1985; 145:73-75.

11. Bursztajn HJ.  More law and less protection: "critogenesis," "legal iatrogenesis," and medical decision-making. J Geriat Psychiatry. 1985; 18:143-153.

12. Bursztajn HJ, Gutheil TG, Mills M, Hamm RM, Brodsky A.  Process analysis of judges' commitment decisions: a preliminary empirical study. Am J Psychiatry. 1986; 143:170-174.

13. Gutheil TG, Bursztajn HJ, Brodsky A.  The multidimensional assessment of dangerousness: competence assessment in patient care and liability prevention. Bull Am Acad Psychiatry Law. 1986; 14:123-129.

14. Bursztajn HJ, Gutheil TG, Warren MJ, Brodsky A.  Depression, self-love, time, and the "right" to suicide.  Gen Hospital Psychiatry. 1986; 8:91-95.

15. Bursztajn HJ.  Ethicogenesis. Gen Hospital Psychiatry. 1986; 8:422-424.

16. Gutheil TG, Bursztajn HJ.  Clinicians' guidelines for assessing and presenting subtle forms of patient incompetence in legal settings. Am J Psychiatry. 1986; 143:1020-1023.

17. Pavlo AM, Bursztajn HJ, Gutheil TG, Levi LM.  Weighing religious beliefs in determining competence. Hospital Community Psychiatry. 1987; 38:350-352.

18. Pavlo AM, Bursztajn HJ, Gutheil TG. Christian Science and competence to make treatment choices: clinical challenges in assessing values. Int J Law Psychiatry. 1987; 395-401.

19. Gutheil TG, Bursztajn HJ, Kaplan AN, Brodsky A.  Participation in competency assessment and treatment decisions: the role of a psychiatrist-attorney team. Mental Physical Disabilities Law Reporter. 1987; 11:446-449.

20. Bursztajn HJ, Gutheil TG, Hamm RM, Brodsky A, Mills M.  Parens Patriae considerations in the commitment process. Psychiatric Quart. 1988; 59:3:165-181.

21. Bursztajn HJ, Gutheil TG, Brodsky A, Swagerty E. Magical thinking, suicide, and malpractice litigation. Bull Am Acad Psychiatry Law, 1988; 16:369-376.

22. Bursztajn HJ, Harding HP, Gutheil TG, Brodsky A. Beyond cognition: the role of disordered affective states in impairing competence to consent to treatment. Bull Am Acad Psychiatry Law. 1991; 19:383-388.

23. Bursztajn HJ, Chanowitz B, Kaplan E, Gutheil TG, Hamm RM, Alexander V. Medical and judicial perceptions of the risks associated with use of antipsychotic medication. Bull Am Acad Psychiatry Law. 1991; 19:271-275.

24. Bursztajn HJ, Chanowitz B, Gutheil TG, Hamm RM. Micro-effects of language on risk perception in drug prescribing behavior. Bull Am Acad Psychiatry Law. 1992; 20:59-66.

25. Deaton RJS, Illingworth PML, Bursztajn HJ. Unanswered questions about the criminalization of therapist-patient sex. Am J Psychotherapy. 1992; 46:526-531.

26. Bursztajn HJ. From PSDA to PTSD: The patient self-determination act and post-traumatic stress disorder. J Clinical Ethics. 1993; 4:71-74.9

27. Pitman RK, Orr SP, Bursztajn HJ. Vinal v. New England Telephone: admission of PTSD psychophysiologic test results in a civil trial. AAPL Newsletter. 1993; 18(3): 67-69.

28. Bursztajn HJ, Scherr AE, Brodsky A. The rebirth of forensic psychiatry in light of recent historical trends in criminal responsibility. Psychiat Clinics N Am. 1994; 17:611-635.

29. Bursztajn HJ, Brodsky A. Authenticity and autonomy in the managed care era: forensic psychiatric perspectives. J Clinical Ethics. 1994; 5:237-242.

30. Bursztajn HJ, Brodsky A. Clear, convincing, and authentic advance directives in the context of managed care? J Clinical Ethics. 1994; 5:364-366.

31. Bursztajn HJ. Reflections on my father's experience with doctors during the Shoah (1939-1945). J Clinical Ethics. 1996; 7:100-102.

32. Bursztajn HJ, Brodsky A. A new resource for managing malpractice risks in managed care. Arch Intern Med. 1996; 156:2057-2063.

33. Bursztajn HJ, Hamm RM, Gutheil TG. Beyond the black letter of the law: an empirical study of a judge's decision-making process in civil commitment hearings. Bull Am Acad Psychiatry Law. 1997; 25:79-94.

34. Bursztajn HJ, Brodsky A. Ethical and legal dimensions of benzodiazepine prescription. Psychiatric Annals. 1998; 28(3):121-128.

35. Bursztajn HJ, Gutheil TG, Brodsky A. Ethics and the triage model in managed care hospital psychiatry. Psychiatric Times. 1998; 15(9): 33-40.

36. Bursztajn HJ. Melatonin therapy: from benzodiazepine-dependent insomnia to authenticity and autonomy. Archives of Internal Medicine. 1999; 159:2393-2395.

37. Bursztajn HJ, Brodsky A. Captive patients, captive doctors: clinical dilemmas and interventions in caring for patients in managed health care. Gen Hospital Psychiatry. 1999; 21:239-248.

38. Bursztajn HJ, Berman S. Commentary on: Clinical criteria for three types of dementia had low sensitivity and high specificity. Evidence-Based Mental Health. 1999; Aug, 2:91.

39. Illingworth PI, Bursztajn HJ. Death with dignity or life with managed care uncertainty? Psychology Public Policy Law. 2000; 6(2):314-241.

40. Gutheil TG, Bursztajn HJ, Brodsky A, Strasburger LH. Preventing "critogenic" harms: Minimizing emotional injury from civil litigation. J Psychol Law. 2000; 28:5-18.

41. Bursztajn HJ. Commentary on: Physicians indicated the need to frame questions and develop indirect approaches that foster patient trust in evaluating victims of domestic violence. Evidence-Based Mental Health. 2000, May, 3:63.

42. Bursztajn HJ. Commentary on: Cognitive behavioural therapy, systemic behavioural family therapy, and non-directive supportive therapy had similar long term effectiveness for major depressive disorder in adolescents. Evidence-Based Mental Health. 2000; Nov., 3:108.

43. Schrecker T, Somerville MA, Acosta L, Bursztajn HJ. Social risk reduction. Soc Sci Med. 2001; 52:1677-1687.

44. Bursztajn HJ. Work disability prevention in the midst of mental illness and life's trauma. Psychiatric Services. 2001; 52:1421.

45. Bursztajn HJ. Protecting patient care and public safety in the managed-care era. Gen Hospital Psychiatry. 2002; 24:1-3.

46. Bursztajn HJ, Brodsky A. Managed-health-care complications, liability risks, and clinical remedies. Primary Psychiatry. 2002; 4:37-41.

47. Bursztajn HJ. Forensic psychiatry: The ethics of mentally impaired patient termination in captive situations. Mid-Atlantic Ethics Committee Newsletter, University of Maryland School of Law, Spring, 2002: 7.

48. Bursztajn HJ, Paul RK, Reiss DM, Hamm RM. Forensic psychiatric evaluation of workers' compensation claims in a managed-care context. J Am Acad Psychiatry Law. 2003; 31:117-119.

49. Bursztajn HJ. "Who Killed Julius Caesar? Psychoforensic Analysis of Decisionmaking Under Stress." The American Psychoanalyst. Fall 2003; 37(3).

50. Bursztajn, HJ, Sobel, R, Allbright, Protecting Privacy in the Behavioral Genetics Era, *27 Mental & Physical Disability L. Rep. 523* (American Bar Association, Commission on Mental and Physical Disability Law 2003)

51. Gutheil TG, Bursztajn HJ, Avoiding ipse dixit mislabeling. J Am Acad Psychiatry Law. 2003; 31:205-210.

52. Gutheil TG, Bursztajn HJ, Hilliard JT, Brodsky A. "Just say No": Experts' Late Withdrawal From Cases to Preserve Independence and Objectivity. J Am Acad Psychiatry Law 32:390-4, 2004.

53. Gutheil TG, Bursztajn HJ. Attorney Abuses of Daubert Hearings: Junk Science, Junk Law, or Just Plain Obstruction? J Am Acad Psychiatry Law 33:150-2, 2005.

54. Pirikitikulr D, Bursztajn HJ. "Are Prisoners Medical Captives?" LJN's BioEthics Legal Review 1(2):1-4, Aug 2005.

55. Gopal A, Pirakitikulr D, Bursztajn HJ. "Informed Consent in Neuropsychosocialpharmacology" Psychiatric Times 2005; 22(13):59-63.

56. Pirakitikulr D, Bursztajn HJ. The Grand Inquisitor's Choice: Comment on the CEJA Report on Withholding Information from Patients. J Clin Ethics 17(4):307-311, 2006.

57. Bursztajn HJ, Pulde MF, Pirakitikulr D, Perlin M. *Kumho* for Clinicians in the Courtroom - Inconsistency in the Trial Courts. Medical Malpractice Law & Strategy Volume 24, Number 2; 1-7, Nov 2006.

58. Cosgrove L, Bursztajn HJ. Undoing Undue Industry Influence: Lessons from Psychiatry as Psychopharmacology. Organ Ethic Fall/Winter 2007; 3(2):131-3.

59. Johnson B, Bursztajn HJ, Coletsos I, Paul R. Reducing the Risk of Addiction to Prescribed Medications. Psychiatric Times Bonus Issue: Clinical Psychiatry and the Law April 15, 2007 Vol. 24 No. 4.

60. Gopal A, Bursztajn HJ. On Skepticism and Tolerance in Psychiatry and Forensic Psychiatry. Psychiatric Times Bonus Issue: Clinical Psychiatry and the Law April 15, 2007 Vol. 24 No. 5.

61. Bursztajn HJ, Pirakitkulr D. Pride and Prejudice: Avoiding Genetic Gossip in the Age of Genetic Testing. J Clinical Ethics 18(2):156-161, 2007.

62. Gopal A, Bursztajn HJ. DSM Biases Evident in Clinical Training and Courtroom Testimony. Psychiatr Ann September 2007; 37(9):604-617.

63. Hamm RM, Reiss DM, Paul RK, Bursztajn HJ. Knocking at the wrong door: Insured workers' inadequate psychiatric care and workers' compensation claims. Int J Law Psychiatry 2007;30:416-426.

64. Haque OS, Bursztajn HJ. Decision-Making Capacity, Informed Consent, and Surrogate and Substituted Judgment at the Boundaries of Self. J Clin Ethics 2007 Fall;18(3)247-251.

10

65. Cosgrove L, Bursztajn HJ. Strengthening Conflict-of-Interest Policies in Medicine. J Eval Clin Pract 2009 Oct 27. [Epub ahead of print]

66. Cosgrove L, Bursztajn HJ. Towards Credible Conflict of Interest Policies in Clinical Psychiatry. Psychiatric Times 2009; 26(1):40-41.

67. Paul R, Lockey C, Hall RCW, Bursztajn HJ. Managing Risks When Practicing in Three-Party Care Settings. Psychiatric Times February 3, 2009. Available online at http://www.psychiatrictimes.com/display/article/10168/1371129?pageNumber=3.

68. Cosgrove L, Bursztajn HJ, Krimsky S, Anaya M, Walker J. Conflicts of Interest and Disclosure in the American Psychiatric Association's Clinical Practice Guidelines. Psychother Psychosom 2009; 78(4):228-232.

69. Oguntoye A, Bursztajn HJ. Commentary: Inadequacy of the categorical Approach of the DSM for Diagnosing Female Inmates With Borderline Personality Disorder and/or PTSD. J Am Acad Psychiatry Law. September 2009; 37(3):306-307.

- Book Chapters

1. Feinbloom RI, Bursztajn HJ, Hamm RM, Brodsky A. Bringing the family into family practice. In: Brazelton TB, Vaughn VC III, eds. The Family: Setting Priorities. New York: Science and Medicine Publishing Co., 1979; 169-179.

2. Bursztajn HJ, Hamm RM, Gutheil TG. The technological target: involving the patient in clinical choices. In: Reiser SJ, Anbar M, eds. The Machine at the Bedside: Strategies for Using Technology in Patient Care. Cambridge, England: Cambridge University Press, 1984; 177-191.

3. Bursztajn HJ, Gutheil TG, Cummins B. Legal issues in inpatient psychiatry. In: Sederer LI, ed. Inpatient Psychiatry. 2d ed. Baltimore: Williams and Wilkins, 1986; 338-356.

4. Bursztajn HJ, Gutheil TG, Cummins B. Legal issues in inpatient psychiatry. In: Sederer LI, ed. Inpatient Psychiatry. 3d ed. Baltimore: Williams and Wilkins, 1991; 379-406.

5. Bursztajn HJ, Hamm RM, Brodsky A, Alexander V, Levi L. Probability, decision analysis, and conscious gambling. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 37-52.

6. Bursztajn HJ, Hamm RM, Brodsky A, Gutheil TG, Alexander V. Subjective assessment in clinical decision making and malpractice liability. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 53-68.

7.  Bursztajn HJ, Gutheil TG, Brodsky A. Affective disorders, competence, and decision-making. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 153-170.

8.  Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V. Managing uncertainty: the therapeutic alliance, informed consent, and liability. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 69-88.

9.  Alexander V, Bursztajn HJ, Brodsky A, Hamm RM, Gutheil TG, Levi L. Involuntary commitment. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 89-112.

10. Kaplan E, Bursztajn HJ, Alexander V, Hamm RM, Brodsky A, Barnard D, Kaplan AN. Making treatment decisions. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 113-132.

11. Alexander V, Bursztajn HJ, Brodsky A, Gutheil TG. Deciding for others; autonomy and protection in tension. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 133-152.

12. Warren M, Commons ML, Gutheil TG, Swagerty EL, Bursztajn HJ, Brodsky A. Suicide, magical thinking, and liability. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 189-208.

13. Hauser MJ, Commons ML, Bursztajn HJ, Gutheil TG. Fear of malpractice liability and its role in clinical decision-making. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 209-226.

14. Canning S, Hauser MJ, Gutheil TG, Bursztajn HJ. Communications in psychiatric practice: Decision-making and the use of the telephone. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 227-238.

15. Commons ML, Sonnert G, Gutheil TG, Bursztajn HJ. Ethics and decisions about suicide. In: Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991; 239-256.

16. Deaton RJS, Colenda CC, Bursztajn HJ. Medical-legal issues. In: Stoudemire A, Fogel BS, eds. Psychiatric Care of the Medical Patient. New York: Oxford University Press, 1993; 929-938.

17. Deaton R, Bursztajn HJ. Antipsychotic medication: regulation through the right to refuse. In: Schwartz HI, ed. Psychiatric Practice Under Fire. Washington, DC: American Psychiatric Press, 1994; 85-101.

18. Bursztajn HJ. One axiom and eight corollaries for managing legal issues in an inpatient psychiatric setting. In: Docherty JP, ed. Inpatient Psychiatry in the 1990s. San Francisco: Jossey-Bass, 1994; 95-107.

19. Bursztajn HJ, Brodsky A. Competence and insanity. In: Jacobson JL, Jacobson AM, eds. Psychiatric Secrets. Philadelphia: Hanley & Belfus, 1996; 501-515.

20. Bursztajn HJ, Brodsky A. Patients who sue and clinicians who are sued in the managed-care era. In: Lifson LE, Simon RI, eds. The Mental Health Practitioner and the Law. Cambridge, MA: Harvard University Press, 1998; 237-249.

21. Bursztajn HJ, Brodsky A. Ethical and effective testimony during direct examination and cross-examination post-*Daubert*. In: Lifson LE, Simon RI, eds. The Mental Health Practitioner and the Law. Cambridge, MA: Harvard University Press, 1998; 262-280.

22. Bursztajn HJ. Responses to a defective managed care product: medical negligence, lack of informed consent, and choicelessness. In: 2000 Wiley Expert Witness Update. New York: Aspen Law Business/Panel Publishers, 2000; 239-264.

23. Bursztajn HJ, Brodsky A. Competence and insanity. In: Jacobson JL, Jacobson AM, eds. Psychiatric Secrets. 2nd ed. Philadelphia: Hanley & Belfus, 2000; 485-498.

24. Deaton RJS, Bursztajn HJ, Brodsky A. The role of the mental health professional in employment litigation. In: McDonald JJ, Jr, Kulick FB, eds. Mental and Emotional Injuries in Employment Litigation. 2nd ed. Washington DC: The Bureau of National Affairs, 2001; 50-71.

25. Bursztajn, HJ, Boersema, RR. Forensic and therapeutic issues in stepparent adoptions: a psychoanalytic perspective. In: Cath SH, Shopper M, eds. Stepparenting: creating and recreating families in America today, NY: Analytic Press.

26. Bursztajn HJ. Preface: Who Killed King Tut? In: King, Michael R., Cooper, Gregory M. Who Killed King Tut? Amherst, NY: Prometheus Books, 2004.

27. Coletsos IC, Bursztajn HJ. Factitious Disorder/Münchhausen Syndrome. In: Domino FJ, Baldor RA, Ehrlich AM, Golding J, eds. The 5-Minute Clinical Consult. 17th ed. Philadelphia: Lippincott Williams & Wilkins, 2008; 468-469.

13

28. Elder WG, Coletsos IC, Bursztajn HJ. Factitious Disorder/Münchhausen Syndrome. In: Domino FJ, Baldor RA, Golding J, Grimes JA, Taylor JS eds. The 5-Minute Clinical Consult. 18th ed. Philadelphia: Lippincott Williams & Wilkins, 2009; 482-483.

- Books

  1. Reiser SJ, Bursztajn HJ, Gutheil TG, Appelbaum PS. Divided Staffs, Divided Selves: A    Case Approach to Mental Health Ethics. Cambridge, U.K.: Cambridge University        Press, 1987.

  2. Bursztajn HJ, Feinbloom RI, Hamm RM, Brodsky A. Medical Choices, Medical Chances: How Patients, Families, and Physicians Can Cope With Uncertainty. New York: Delacorte, 1981; New York: Routledge, Chapman & Hall, 1990.

  3. Gutheil TG, Bursztajn HJ, Brodsky A, Alexander V, eds. Decision Making in Psychiatry and the Law. Baltimore: Williams & Wilkins, 1991.

  4. Perlin ML, Bursztajn HJ, Gledhill K, Szeli E. Psychiatric Ethics and the Rights of Persons with Mental Disabilities in Institutions and the Community. UNESCO Chair in Bioethics, 2008.

## COURSE CO-DIRECTOR AND FACULTY

- Harvard Medical School, Department of Continuing Education and Massachusetts Mental Health Center:
  - "Ethical Issues in Clinical Practice," September 1990.
  - "Sex Between Clinicians and Patients: Clinical, Legal and Medico-Legal Perspectives," September 1990.
  - "Malpractice Prevention for the 1990s: An Update on the Issues and Practical Approaches," January 1991.
  - "The Clinician in Court: A Survival Guide," January 1992.
  - "Dangers and Pitfalls of Forensic Practice," January 1992.
  - "Liability Prevention for Medical and Surgical Practitioners: Trends and Update," January, 1993.
  - "Doctors and Nurses in Court: A Basic Survival Guide," January, 1993.
  - "Malpractice in the 1990s: Trends and Update," February, 1993.
  - "The Clinician in Court: A Survival Guide," February, 1993.
  - Massachusetts Bar Association, Continuing Legal Education Course
  - "Nuts and Bolts of Using Medical Experts at Trial," November 1990.

## FACULTY

- Harvard Medical School, Department of Continuing Education and Massachusetts Mental Health Center:
  - "Intensive Diagnostic Interviewing," 1990-.

## PRESENTATIONS

14

1. "Prevention of Violence and Suicide by the High-Risk Patient." Mount Auburn Hospital Grand Rounds, Cambridge, MA, September 15, 1992.

2. "Malpractice Prevention." Brookside Hospital Grand Rounds, Nashua, NH, March 15, 1993.

3. "Post-Traumatic Stress Disorder in the Courtroom." Panel, American Psychiatric Association, San Francisco, CA, May 26, 1993.

4. "Psychiatry Issues." Medical Malpractice Seminar for Office of Legal Education, Executive Office for United States Attorneys, Salt Lake City, UT, July 13, 1993.

5. "Liability for Sexual Misconduct of Government Providers." with Thomas G. Gutheil, M.D., Workshop, Office of Legal Education, Executive Office for United States Attorneys, Salt Lake City, UT, July 13, 1993.

6. "Competency to Confess to a Criminal Act." American Academy of Forensic Sciences, Boston, MA, 1993.

7. "Malpractice Prevention in High-Risk Doctor-Patient Encounters." Lawrence General Hospital, Lawrence, MA, January 18, 1994.

8. "Forensic Psychiatric Assessment of Mental Damages." Discussant, Panel, American Psychiatric Association, Philadelphia, PA, May 24, 1994.

9. "What is Forensic Psychiatry?  A Guide for Judges."  New Hampshire Bar Association Meeting, January 27, 1995.

10. "Diminished Capacity in the Criminal Justice System."  Seventh Annual Bridgewater, MA, State Hospital Conference, April 7, 1995.

11. "Fact vs. Expert Witness."  Workshop, The Clinician in Court: A Survival Guide, Harvard Medical School Department of Continuing Education, April 8, 1995.

12. "Medical Choices, Managed Care and Uncertainty." Medical Staff Conference, Emerson Hospital, Concord, MA, June 9, 1995.

13. "Behavioral Strategies for Malpractice Prevention in a Managed Care Era." Medical Grand Rounds, Marlborough Hospital, Marlborough, MA, November 30, 1995.

14. "Violence Against Attorneys, Judges, and Litigants in the Family Law Courtroom." Boston Bar Association, Family Law Section, December 1995.

15. "Violence in the Courtroom." Annual Conference of Massachusetts Probate and Family Court Judges, Stockbridge, MA, May 10, 1996.

16. "How to be an Ethical and Effective Medical Witness, Post-*Daubert*." National Expert Witness and Litigation Seminar, Hyannis, MA, June 20, 1996.

17. "Effective and Ethical Testimony for Mental Health Professionals." Testifying and Consulting Experts, San Francisco, CA, September 1996.

15

18. "Being an Ethical and Effective Medical Expert." Testifying and Consulting Experts, San Francisco, CA, September 1996.

19. "Dimensions of a Forensic Psychiatric Home Page." American Academy of Psychiatry and the Law, San Juan, PR, October 1996.

20. "From the Shoah to Managed Health: What One Forensic Psychiatrist has Learned about Clinical Ethics." YIVO Institute and New School for Social Research, New York, NY, November 1996.

21. "Preventing Malpractice Litigation in Managed Health Care Settings." Harvard Medical School Department of Continuing Education, November 22, 1996.

22. "Ethical and Effective Testimony for Physicians Accused of Malpractice." Harvard Medical School Department of Continuing Education, November 23, 1996.

23. "Ethical and Decision Making Issues in Primary Care Medicine in a Managed Care Context." Vermont Technical College, Vermont Ethics Network, February 10, 1997.

24. "Surreptitious LSD Administration: Ethical, Toxicologic and Psychiatric Impact on Product Liability Issues." American Academy of Forensic Sciences, February 19, 1997.

25. "Medical Historical Perspectives Regarding Managed Care and Medical Necessity: True and False." Chairman of Symposium on Ethical Issues in Managed Health Care. American Psychiatric Association Annual Meeting, San Diego, CA, May 19, 1997.

26. "Medical Necessity, Managed Health Care Denial of Benefits, and the Nuremberg Code." Panel: "Medical Ethics: Who Gets the Care?" Moderator: Professor Uwe E. Reinhardt, Ph.D., Princeton University 250th Anniversary Symposium, Princeton, NJ, May 29, 1997.

27. "Capital Punishment in the McVeigh Case." BBC World Services. Cambridge, MA, June 13, 1997.

28. "Managed Health Care: Protecting the Quality of Care in the Clinic and the Courtroom." Saints Memorial Medical Center, Lowell, MA, July 9, 1997.

29. "Why Do They Do It? Motivation of Violent Criminals." National Association of Legal Secretaries Annual Meeting and Educational Conference, Boston, MA, July 26, 1997.

30. "Substituting Alliance for Alienation: Supporting the Human Side in Changing Health Care." Advanced Risk Management Seminar, New England Health Care Assembly, Falmouth, MA, July 28, 1997.

31. "Clinical Ethics and Shared Decision-Making with Patients and Their Families." Healthcare Educational and Research Fund and Saratoga Hospital, Saratoga, NY, September 18, 1997.

32. "Working with High-Risk Patients and Families to Turn Alienation into Patient Loyalty." Healthcare Educational and Research Fund and Saratoga Hospital, Saratoga, NY, September 18, 1997.

33. "High-Risk Patients and Families in Chronic Illness Situations." Physicians' Meeting, Spaulding Rehabilitation Hospital, Boston, MA, October 8, 1997.

34. "Protecting Yourself from Potential Litigation from Employees and Patients." Harvard School of Public Health conference: "Leadership in Evolving Health Care Systems." Boston, MA, November 4, 1997.

35. "Forensic Psychiatry and Brain Imaging." Harvard Medical School, Advanced Workshop, "Liability Prevention" postgraduate course, Boston, MA, November 22, 1997.

36. "Sexual Harassment Post-*Daubert*." Presidential Panel, American Academy of Forensic Sciences, San Francisco, CA, February, 1998.

37. "Exploring the Consequences of a National Health Care Data Base: Cyberspace Medicine." Harvard Law School Berkman Center: "Privacy and Cyber/Spaces: Government Databanks and Identification. Medical and Other Instances," Cambridge, MA, May 13, 1998.

38. "Values in the Physician-Patient-Managed Health Care Relationship." American Psychiatric Association Annual Meeting, Toronto, Canada, June 1, 1998.

39. "Employment Disability and Accommodation Dilemmas." American Psychiatric Association Annual Meeting, Toronto, Canada, June 4, 1998.

40. "Sexual Misconduct in Managed Health Care Settings." Boston Psychoanalytic Society and Institute: "Sexual Misconduct by Psychotherapists, Other Health Care Professionals, and Clergy: Prevention and Treatment of Boundary Violations by Professionals." Chestnut Hill, MA, October 4, 1998.

41. "Boundary Violations: How are they defined in the patient-physician relationship?" Massachusetts Medical Society, Waltham, MA, October 7, 1998.

42. "Risk Management: How to reduce medical malpractice suits." Sheraton-Newton Hotel, Newton, MA, October 10-11, 1998.

43. "Post-*Daubert* Sexual Harassment Expert." 1998 Annual Meeting Program, American Academy of Psychiatry and the Law, New Orleans, Louisiana, October 22, 1998.

44. "Functional Brain Imaging and Criminal Behavior," with Lisa Acosta, BA. 1998 Annual Meeting Program, American Academy of Psychiatry and the Law, New Orleans, LA, October 23, 1998.

45. "Protecting Yourself from Potential Litigation from Employees and Patients." Harvard School of Public Health: "Leadership in Evolving Health Care Systems." Boston, MA, November 4, 1998.

46. "Ethical and Legal Issues in Managed Health Care." Mount Auburn Hospital, Cambridge, MA, November 11, 1998.

47. "Ethical & Technical Effects of *Daubert* on Experts' Opinions." Harvard Medical School: "The Mental Health Clinician in Court: A Survival Guide." Boston, MA, November 21, 1998.

48. "Managed Care, Standards of Care & Informed Consent: How to Present Your Medical Opinion." Harvard Medical School: "Medical and Surgical Practitioners in Court: A Survival Guide." Boston, MA, November 21, 1998.

49. "When Am I Going To Be Sued: How Can Physicians, Lawyers, and Surgeons Prevent Malpractice, Sexual Misconduct, and Employee Litigation?" Lawrence General Hospital, Lawrence, MA, January 13, 1999.

50. "Forensic Psychiatry and Brain Imaging Testimony Post-*Daubert*." New England School of Law: "Criminal and Civil Issues Concerning the Mentally Ill: Lawyers, Courts & Mental Health Professionals." Boston, MA, January 27, 1999.

51. "An Essential Guide to Ethical and Effective Conflict Resolution via an Objective Expert's Deposition." SEAK Inc. "National Medical Witness Summit." Fort Lauderdale, FL, February 20-21, 1999.

52. "Boundary Violations: How to Avoid the Slippery Slope." The Massachusetts Medical Society. Holyoke, MA, March 10, 1999.

53. "Clinical Responses to Managed Health Care." American Psychiatric Association, Washington, DC, May 18, 1999.

54. "Beyond the Court-Appointed Custody Expert Post-*Daubert*." American Psychological Association Convention: "Abusive Practices in Divorce Cases: Clinical, Legal and Ethical Dilemmas." Boston, MA, August 23, 1999.

55. "Brain Imaging and Child Development." Watertown Public School, Watertown, MA, November 4, 1999.

56. "Premises Liability: Ethical and Effective Psychological and Psychiatric Evaluation Post-*Daubert*." ICLE, Atlanta, GA, November 5, 1999.

57. "Ethical & Technical Effects of *Daubert* on Experts' Opinions." Four Seasons Hotel, Boston, MA, December 11, 1999.

58. "Legal Issues of Psychopharmacology." Mt. Auburn Hospital, Cambridge, MA, April 21, 2000.

59. "Maintaining Your Credibility & Integrity." SEAK Inc., National Expert Witness & Litigation Seminar, Hyannis, MA, June 16, 2000.

60. "The Physician Expert In Court: Ethical and Effective Testimony." Harvard Medical School CME: "The Mental Health Clinician in Court: A Survival Guide." Boston, MA, December 2, 2000.

18

61. "The Forensic Expert: Beyond It Is Because I Say So." Harvard Medical School: "The Mental Health Clinician in Court: A Survival Guide." Boston, MA, December 2, 2000.

62. "Talking to pre-K to Grade 6 Children about 9/11." Atrium School Consultation, Watertown, MA, September, 11, 2001.

63. "Protecting Human Research Subjects: Ethical, Regulatory and Scientific Considerations." Massachusetts College of Pharmacy, October 15, 2001.

64. "The Shoah and its Aftermath on Film: Thoughts on Professional Ethics." American Academy of Psychiatry & the Law, 31st Annual AAPL, A/V session, Boston, MA, October 26, 2001.

65. "New Developments in Informed Consent, PTSD, Addictions, Medical Care and the Mental Health Clinician." Harvard Medical School CME: "The Mental Health Clinician in Court: A Survival Guide." Boston, MA, December 1, 2001.

66. "Protecting Patient Mental Health Care and Public Safety after 9/11." Hawaii County Community Mental Health Center, Adult Mental Health Division, Dept. of Health, Hilo Island, Hawaii,  February 21, 2002.

67. "Aftermath of 9/11 - The Sixth-Month Anniversary." New England Cable News, March 10, 2002.

68. "Post-Traumatic Stress Disorder for Physicians and Surgeons." Exeter Hospital Medical & Surgical Staff Grand Rounds, Exeter, NH, April 30, 2002.

69. "The Post-Traumatic Stress Disorder Spectrum for Physicians and Surgeons." CME Grand Rounds, Exeter Hospital, Exeter, NH, April 2002.

70. "'Our Children': The aftermath of becoming an orphan post the Shoah." A/V Presentation, American Psychiatric Association, Philadelphia, PA, May 2002.

71. "Prison Expansion and Recidivism." Public Television Documentary Film sponsored by the Martin Luther King Institute, Washington, D.C., July 3, 2002 Interview.

72. "The Assassination of King Tut."  Discovery Channel, Fall 2002.

73. "Hunting the Sniper; Does He Have a Profile?" New England Cable News, October 17, 2002 Interview.

74. "Profiling the Washington DC Area Sniper." CNN, October 21, 2002 Interview.

75. "The Death Penalty and Post-Atkins Concerns." American Bar Association, Editorial Advisory Board to the Mental and Physical Disability Law Reporter Commission, Washington DC, November 15-16, 2002.

76. "The Origins of Violence in Human Society." Harvard Hillel, Cambridge, MA, November 20, 2002.

77. "Mind Games:  Paranormal Phenomena." WCVB-TV, Chronicle, Boston, MA, April 23, 2003.

78. "Who Killed Julius Caesar?" Discovery Channel, April 27, 2003.

79. Workshop: "Patient Responsibility for Addiction to Prescribed Substances." American Psychiatric Association, Annual Meeting, San Francisco, May 19, 2003.

80. Workshop: "Post-Genocide Psychological Trauma in Film: Under the Domim Tree." American Psychiatric Association, Annual Meeting, San Francisco, May 20, 2003.

81. "Epilepsy and Empire, Caveat Caesar." Harvard Magazine. September-October 2003: Volume 106, Number 1, Page 19

82. "Patient Responsibility for Addiction to Prescribed Medicines." Institute of Psychiatric Services Workshop, Boston, MA, October 29, 2003.

83. "People in the News, Michael Jackson", CNN, January 17-18, 2004.

84. "The Ides of March." Discovery Channel, air date March 17, 2004.

85. "Ethical, Clinical and Forensic Issues in Pain Management." Mass General Hospital/New England Medical Center Pain Care Unit, Boston, MA, April 7, 2004.

86. "Functional Imaging in Court: Uses and Controversies." American Psychiatric Association, 2004 Annual Meeting, New York City, May 3, 2004.

87. "Postgenocide Psychological Trauma in Film, *The Summer of Aviya*." American Psychiatric Association, 2004 Annual Meeting, New York City, May 5, 2004.

88. "Avoiding Dual-Agency Pitfalls of Work-related Neuropsychiatric Impairments." American Psychiatric Association, 2004 Annual Meeting, New York City, May 6, 2004.

89. "Who Killed Julius Caesar? A new take on Caesar's death." Harvard Club of France, Paris, France, June 22, 2004.

90. "Columbus: Secrets from the Grave." Discovery Channel, to air August 2004.

91. "Revisiting a Death Foretold: Discovering New Questions for a Classic Mystery." The Boston Psychoanalytic Society and Institute, October 4, 2004.

92. "The Science of Zyprexa." Zyprexa Conference presented by Scientific Evidence, October 14, 2004.

93. "Correctional Risk Management." Correctional Association of Massachusetts Conference, Milford, MA, October 26, 2004.

94. "The Body of Adolph Hitler." BBC, October 2004.

95. "The Body of JFK." BBC, October 2004.

96. "Becoming expert on experts: from the classics to forensic neuropsychiatry." Federal Bar Association, Chattanooga, TN, November 11, 2004.

20

97. "Who Killed Alexander the Great?" Discovery Channel, November 24, 2004.

98. "The Mysterious Death of Cleopatra." Discovery Channel, December 6, 2004.

99. "Clinical expertise in medical product litigation: On not losing in translation." American Conference Institute's Drug and Medical Device Litigation Conference, New York, NY, December 14, 2004.

100. "Forensic Neuropsychiatry of Decision-Making: The Ides of March." McLean Hospital Department of Postgraduate and Continuing Education Grand Rounds, Belmont, MA, March 10, 2005.

101. "Standards for experts post-Daubert." Continuing Legal Education Institute of Georgia, May 6, 2005.

102. "TRAUMA: New Developments in Psychoanalysis." IPA 44th Congress, Rio De Janeiro, Brazil, July 2005.

103. "Post-*Daubert* Standards in Forensic Neuropsychiatry." American Academy of Forensic Sciences Annual Meeting, Seattle, WA, February 23, 2006.

104. "Going to the Heart of the Matter in Patient Interviews." American Psychiatric Association Annual Conference, Toronto, Canada, May 25, 2006.

105. "Childhood Trauma in Film: Undzere Kinder (Our Children)." World Psychiatric Association International Congress, Istanbul, Turkey, July 15, 2006.

106. "Very Hot Cold Cases." American Association for Medical Transcription Annual Convention & Expo, Boston, MA, August 2006.

107. "Reflections on My Father's Experience with Doctors During the Shoah (1939-1945)." Boston University, Boston, MA, November 16, 2006.

108. "Going to the Heart of the Matter in Patient Interviews." American Psychiatric Association Annual Conference, San Diego, CA, May 21, 2007.

109. "An Analysis Regarding the Effects of Workplace Racial Discrimination and Harassment on Intimate Relationships and Sexual Function." 30th Anniversary Congress of the International Academy of Law and Mental Health, Padua, Italy, June 26, 2007.

110. "Childhood Trauma in Film: Unzere Kinder (Our Children)." 30th Anniversary Congress of the International Academy of Law and Mental Health, Padua, Italy, June 26, 2007.

111. "Childhood Trauma in Film: Unzere Kinder (Our Children; Poland 1948)." YIVO Institute for Jewish Research, New York City, November 4, 2007.

112. "Forgetting and Remembering in Poetry and Psychoanalysis." The Boston Psychoanalytic Society and Institute Special Members Seminar, Boston, November 12, 2007.

21

113. "Why a psychodynamically informed forensic psychiatry matters: the strange case of the unspeakability of sexual dysfunction as a consequence of racial harassment and discrimination." Risk Factors in the Workplace: Social Policy and Ethics Conference, Montreal, Quebec, November 30, 2007.

114. "Kumho for Clinicians in the Courtroom." Lorman Education Services Teleconference, December 5, 2007.

115. "State of IL v. Aubrey D. Tucker, Jr." Harvard Law School "Capital Punishment in America," February 26, 2008.

116. "Elvin Semrad's Interviewing Fundamentals for High-Pressure Clinical, Forensic, and Educational Contexts." American Psychiatric Association Annual Conference, Washington, DC, May 7, 2008.

117. "Unmasking the Sophisticated Malingerer in Individual and Group Claims." Medical Malpractice Seminar, National Advocacy Center, Columbia, SC, May 22, 2008.

118. "Emerging Roles, Trends, and Risk Management for Family Court-Involved Psychologists." American Psychological Association Annual Convention, Boston, MA, August 14, 2008.

119. "Forensic Psychiatric & Legal Perspectives on Law & Memory." MCLE Program, Boston, MA, August 14, 2008.

120. "Evaluating Emotional Pain in Psychological Claims." National Advocacy Center Basic Employment Discrimination Seminar, Columbia, SC, April 9, 2009.

121. "Conflicts of Interest in Hospice Care." Beacon Hospice Ethics Committee, Brookline, MA, June 12, 2009.

122. "Health Care in the Lodz Ghetto: Care, Compliance, Conscience and Resistance." Surgical Grand Rounds, Beth Israel Deaconess Medical Center, Boston, MA, July 8, 2009.

123. "Health Care in the Ghetto of Lodz: Care, Compliance, Conscience and Resistance." Maimonides Society of Harvard Medical School, November 10, 2009.

124. "Health Care in the Ghetto of Lodz." Leonard Morse Hospital at MetroWest Medical Center, Natick, MA, November 30, 2009.

PROFESSIONAL AND GENERAL EDUCATION PUBLICATIONS

1. Gutheil TG, Bursztajn HJ, Brodsky A. Liability prevention through informed consent with some new approaches for the clinician. Risk Management Foundation Forum. 1986; 7:8-9.

2. Bursztajn HJ. Flight: the eloquence of silence. Harvard Medical Alumni Bulletin. 1989; 62:3:45-47.

3.  Bursztajn HJ. The phobic in court. Lawyers Weekly, December 7, 1992

4.  Bursztajn HJ. The role of a forensic psychiatrist in legal proceedings. J Mass Acad Trial Attys, Vol. 1, No. 2, October 1993:33-35.

5.  Bursztajn HJ. New developments in the role of Post-Traumatic Stress Disorder in civil and criminal law. J Mass Acad Trial Attys, Vol. 1, No. 3, January 1994:58-60.

6.  Bursztajn HJ. Traumatic memories as evidence: true or false? J Mass Acad Trial Attys, Vol. 2, No. 1, July 1994:77-80.

7.  Bursztajn HJ. The role of the forensic psychiatrist in civil proceedings. (New Hampshire) Trial Bar News 16, Summer 1994:84-86.

8.  Anderson MK, Bursztajn HJ. Supervisory negligence litigation in context. J Mass Acad Trial Attys, Vol. 2, No. 2, October 1994:45-46.

9.  Bursztajn HJ. Psychiatric experts in victim litigation. Crime Victims' Litigation Quarterly, Vol. 2, No. 1, February 1995.

10. Bursztajn HJ, Saunders LS, Brodsky A. National certification for forensic psychiatrists: A preview of the post-*Daubert* expert. J Mass Acad Trial Attys, Vol. 2, No. 4, April 1995:53-56.

11. Saunders LS, Bursztajn HJ, Brodsky A. Recovered memory and managed care: HB 236's post-*Daubert* "science" junket. (New Hampshire) Trial Bar News 17, Spring 1995:27-37.

12. Bursztajn HJ, Joshi PT, Sutherland SM, Tomb DA (Article Consultants). Recognizing posttraumatic stress. Patient Care, March 30, 1995.

13. Bursztajn HJ, Hilliard JT. Violence against attorneys and judges: Protecting yourself before and after a threat. J Mass Acad Trial Attys, Vol. 3, No. 1, July 1995:47-51.

14. Bursztajn HJ, Saunders LS, Brodsky A. *Daubert* without prejudice: Achieving relevance and reliability without randomness. J Mass Acad Trial Attys, Vol. 4, No. 1, January 1996:54-58.

15. Bursztajn HJ, Saunders LS, Brodsky A. Medical negligence and informed consent in the managed care era. Health Lawyer. 1997; 9(5):14-17.

16. Bernstine EG, Bursztajn HJ, Wilkens J. Effective use of scientific evidence: lessons from the Simpson trial. J Mass Acad Trial Attys, Winter 1997:22-28.

17. Bursztajn HJ, Saunders LS, Brodsky A. Keeping a jury involved during a long trial. Criminal Justice, Vol. 11, No. 4, Winter 1997:8-9.

18. Bursztajn HJ, Brodsky A. A new resource for managing malpractice risks in managed care. The Connecticut Association of Not-for profit Providers for the Aging, March 1997:4.

23

19. Bursztajn HJ, Brodsky A. Responsibility without scapegoating. Health Decisions, A Publication of The Vermont Ethics Network, Vol. 5, No. 1, May 1997:3.

20. Bernstine EG, Bursztajn HJ, Wilkens J. Emotional justice: further lessons from the Simpson trial. J Mass Acad Trial Attys, Spring 1997:18-26.

21. Bursztajn HJ. Preventing neo-Nazi cult violence in our schools. Jewishfamily.com. 1999.

22. Bursztajn HJ. Treatment for managed care pain. Harvard Medical Alumni Bulletin, Autumn 1999:9.

23. Bursztajn HJ, Joshi PT, Sutherland SM, Tomb DA (Article Consultants). Recognizing posttraumatic stress. Patient Care, October 15, 1999 (second edition).

24. Bursztajn HJ, Sobel R. Ban genetic discrimination. Boston Globe, August 7, 2000.

25. Bursztajn HJ, Saunders LS, Brodsky A. Keeping a jury involved during a long trial. Pro/Con 4. 2005; (21):166-169, Grollier Press: Danbury, CT. (Text for high school teachers for American Civics.)

26. Bursztajn, HJ. Dead Men Talking. Harvard Medical Alumni Bulletin, Spring 2005:17.

27. Bursztajn, HJ. Prescriptions for Hope. Harvard Medical Alumni Bulletin, Autumn 2006:10.

## LETTERS TO THE EDITOR

1. Bursztajn HJ. On Students' Drinking. Princeton Alumni Newsletter, February 24, 1988.

2. Gutheil TG, Bursztajn HJ. Ways of Dealing With a Malpractice Hazard. Am J Psychiatry. 1988; 145:1492-93.

3. Bursztajn HJ. Efficacy research and psychodynamic psychiatry. Am J Psychiatry. 1991; 148:817-818.

4. Bursztajn HJ. Competency to make a will. Am J Psychiatry. 1992; 149:1415.

5. Bursztajn HJ, Gutheil TG. Protecting patients from clinician-patient sexual contact. Am J Psychiatry. 1992; 149:1276.

6. Bursztajn HJ. An overview of sexual harassment. Am J Psychiatry. 1995; 152:478.

7. Bursztajn HJ. Criminalizing doctor-assisted suicide isn't a cure. Boston Globe, January 9, 1997.

8. Bursztajn HJ. Psychotherapist versus expert witness. Am J Psychiatry. 1998; 155:307.

9. Bursztajn HJ. Recovered memories. Psychiatric Services. 1998; 49:699-700.

10. Bursztajn HJ. On the goals of the Freud Library of Congress Museum Exhibition. New York Times Magazine, November 1, 1998: Section 6:20.

11. Bursztajn HJ, Sobel R.  Accountability without health care data banks.  Health Affairs. 1998; 17(6):252-253.

12. Bursztajn HJ.  Treatment research at the crossroads: the scientific interface of clinical trials and effectiveness research. Am J Psychiatry. 1999.

13. Bursztajn HJ.  When health care goes lacking.  New York Times, August 4, 1999.

14. Bursztajn HJ.  Suspicious trials in Iran.  New York Times, May 9, 2000.

15. Bursztajn HJ.  Princeton University faculty.  Princeton Alumni Weekly, May 17, 2000.

16. Bursztajn HJ. Death with Dignity.  New York Review of Books, April 12, 2001.

17. Bursztajn HJ. Reducing clinical research risks. New York Times, August 1, 2001.

18. Bursztajn HJ. Bio-War: Best defense is a good offense. Wall Street Journal, October 3, 2001.

19. Bursztajn HJ. An offensive against bioterrorism.  Boston Globe, October 4, 2001.

20. Bursztajn HJ. Beautiful minds can be reclaimed.  New York Times, March 10, 2002.

21. Bursztajn HJ.  Health care in the right doses.  New York Times, July 26, 2002.

22. Bursztajn HJ.  The fateful gamble in Moscow.  New York Times, October 29, 2002.

23. Bursztajn HJ. Kahneman's influence.  Princeton Alumni Newsletter, February 2003.

24. Bursztajn HJ. Common pitfalls in the evaluation of testamentary capacity.  J Am Acad Psychiatry Law 2008 36(1):157.

25. Cosgrove L, Bursztajn HJ, Krimsky S. Developing Unbiased Diagnostic and Treatment Guidelines in Psychiatry . N Engl J Med May 7, 2009 360(19):2035-2036.

26. Preter M, Bursztajn HJ. Crisis and opportunity - The DSM-V and its neurology quandary. Asian J Psychiatry. 2009 In Press.

RECENT BOOK REVIEWS

1. Bursztajn HJ, Managing care, not dollars. The continuum of mental health services. Am J Psychiatry, 1998; 155:985.

2. Bursztajn HJ. Managing managed care.  Am J Psychiatry. 1999; 156:148.

3. Bursztajn, HJ, Tan, S Unconscious Crime: Mental Absence and Criminal Responsibility in Victorian London, JAMA, 2004; 291: 1777-1778.

4. Zolovska B, Bursztajn HJ.  Are You There Alone?" The Unspeakable Crime of Andrea Yates.  American J Psychiatry. 2005; 162(4).

5.  Gopal A, Bursztajn HJ. Offender Profiling: An Introduction to the Sociopsychological Analysis of Violent Crime. Am J Psychiatry 2006; 163(3):2-3.

6.  Haque OS, Bursztajn HJ. Counseling and Psychotherapy Essentials: Integrating Theories, Skills, and Practices. Am J Psychiatry 2007; 164(6):984.

7.  Gopal A, Bursztajn HJ. Clinical Handbook of Psychiatry and the Law. JAMA 2007;298:1224-1225.

8.  Haque OS, Bursztajn HJ. Consent to Treatment: A Practical Guide. JAMA 2007;298:1569-1571.

**Harold J. Bursztajn, MD**
96 Larchwood Drive
Cambridge, MA  02138
Telephone: 617-492-8366
Telefax:    617-441-3195
http://www.forensic-psych.com

Princeton University AB 1972
Harvard Medical School MD 1976

---

## TESTIMONY
### (*indicates both courtroom testimony & deposition)

A.    <u>Courtroom</u>

1.  Regina vs. John Gouldbourne, Ind. No. 53 of 2004, Grand Court of the Cayman Islands, George Town, Grand Cayman (May 30, 2006)

2.  United States vs. David Sanders, No 00 CR 675, United States District Court Northern District of Illinois (December 8, 2006)

3.  State of IL vs. Aubrey D. Tucker, No 05-CF-19, Lawrence County, Illinois Second Judicial Circuit Court (February 9, 2007 Evidentiary Hearing)

4.  Cornelius vs. Shea, Civil Action No 01-1919C, Commonwealth of Massachusetts Superior Court (March 7, 2007)

5.  Elloian vs. Elloian, Commonwealth of Massachusetts, Middlesex County Superior Court, Civil Action No. 04-0540 (March 12, 2007)

6.  Winston vs. Squeri v. Boston Realty Works, Commonwealth of Massachusetts, Suffolk County Superior Court, Civil Action No. 02-0814 (June 5, 2007)

7.  Estate of Herbert L. Abrons, et al vs. Anne Abrons, et al., Circuit Court of Florida, Twentieth Judicial Circuit, Probate Division File No. 05-312-CP-02-HDH (September 7, 2007)*

8.  State of Illinois vs. Aubrey D. Tucker, No 05-CF-19, Lawrence County, Illinois Second Judicial Circuit Court (September 27, 2007 Offer of Proof & Mitigation Testimony)

9.  State of Iowa vs. June Betty Lyman, Criminal No. FECR053939, Iowa District Court for Woodbury County (October 23, 2007)

*Thirty years of patient care, consultation and teaching*

10. de Vries and Carter vs. Secaucus Fire Department, et al., Superior Court of New Jersey, Hudson County Docket No. HUD-L-3520-04 (May 13, 2008)*

11. Guardianship of George Kaltsas, Docket No. 05P1339-G12, Massachusetts Probate and Family Court, Worcester Division (June 3, 2008)

12. Anita Graham vs. ValueOptions, Inc., Maricopa County Superior Court State of Arizona, Case No. CV2006-010027 (November 21, 2008)*

13. Re: Khozami, Said Jean Yazbek, A# 73-579-794, Immigration Court, Boston, MA (January 9, 2009)

14. State of Iowa vs. Lawrence Douglas Harris, Sr., Iowa District Court for Woodbury County Criminal, No. FECR054878 (January 27, 2009)*

**B.**     **Deposition Only**

1. State of New Hampshire v. Michael Addison, Hillsborough County Superior Court Case No. 2008-0945 (November 28, 2008)

2. Adams v. Cletus Carvalha, et al., Commonwealth of Kentucky, Fayette Circuit Court Civil Action No. 06-CI-3761 (February 11, 2009)

3. Estate of Randy Johnston vs. Morton Plant Hospital, and Rachel T. Agustines, Florida Circuit Court of the Sixth District, Pinellas County Judicial Court, Florida, No. 07-1619 (March 6, 2009)

4. In re: Risperdal/Seroquel/Zyprexa Litigation, Superior Court of New Jersey, Middlesex County, Case Code 274 (October 19-20)