UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ESTATE OF MELINDA DUCKETT, by and
through her personal representative,
KATHLEEN CALVERT and BETHANN
EUBANK and WILLIAM GERALD EUBANK, as
legal parents of MELINDA DUCKETT, and as
grandparents and next friends of T.D., a child
and M.E., a minor sibling of MELINDA
DUCKETT,

           Plaintiffs,

v.                                  Case No.  5:06-cv-444-Oc-10GRJ

CABLE NEWS NETWORK LLLP (CNN), a
Delaware Corporation, NANCY GRACE,
individually and as an employee/agent of CNN,
JOSHUA DUCKETT,

           Defendants.
_____/

## ORDER

Pending before the Court are: (1) Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 129) to which Defendants filed a Response in Opposition (Doc. 131); and (2) the Addendum to Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 139) which the Court has construed as an amendment to Plaintiffs' Motion for Leave to File Amended Complaint. Defendants filed a response to the amendment (Doc. 142) and, thus, this matter is ripe for review. For the reasons discussed below, Plaintiffs' Motion for Leave to File Amended Complaint is **DENIED**.

## I. BACKGROUND

Plaintiffs initiated this case in November 2006 by filing a Complaint in the Circuit Court of the Fifth Judicial Circuit in and for Lake County, Florida (Doc. 5), which

contained four state law claims against the Defendants: (1) a claim by Melinda Duckett's Estate under Florida's Wrongful Death Act,[1] premised on Defendants' alleged intentional infliction of emotional distress and Ms. Duckett's resulting suicide; (2) a claim by Melinda Duckett's parents and her minor sister for intentional infliction of emotional distress, premised on the Defendants' initial and continued airing of Nancy Grace's telephone interview with Ms. Duckett; (3) a claim by all Plaintiffs against the Defendants and Joshua Duckett (the father of T.D.) requesting an equitable accounting of all reward monies and donations made to the T.D. Family Charitable Trust Fund; and (4) a claim of misappropriation of likeness by Melinda Duckett's Estate.

In December 2006, Defendants removed the case to this Court on the basis of diversity jurisdiction. In January 2007 and again in June 2007, Plaintiffs filed motions requesting leave of Court to amend their Complaint to add claims for equitable accounting and for fraud against Laurie Konnerth, the trustee of the T.D. Family Charitable Trust Fund and against Joshua Duckett. (Docs. 11, 30.)  The Court denied both motions in July 2007. (Doc. 35.) In the Court's resolution of other pending motions in the same order, the Court found that the Plaintiffs lacked standing to bring a claim for equitable accounting, and dismissed Joshua Duckett from this case.

In August 2007, Plaintiffs voluntarily withdrew their claim for misappropriation of likeness in response to Defendants' Motion to Dismiss. (Doc. 44.) Thus, as of August 2007, there were only two remaining claims in this case, one on behalf of the Estate of Melinda Duckett for intentional infliction of emotional distress and one by William and

---

[1] FLA. STAT. § 768.19 (2006).

Bethann Eubank for emotional distress caused by the broadcast of the show. In ruling on Defendants' Motion to Dismiss, the Court noted that both Plaintiffs and Defendants "appear[ed] to argue that the Plaintiffs have asserted a separate claim for wrongful death predicated on fraudulent misrepresentation." The Court concluded, however, that because "it [was] clear from the face of the Complaint that the Plaintiffs . . . raised a single claim of wrongful death predicated on the Defendants' alleged intentional infliction of emotional distress . . . [t]he Court [would] therefore not consider any further arguments with respect to an independent fraudulent misrepresentation claim."

Plaintiffs now seek leave of Court to amend their Complaint to add two causes of action against Defendants, Cable News Network ("CNN") and Nancy Grace - a claim for negligent misrepresentation[2] and a claim for tortious interference with a police investigation.

Plaintiffs filed their Motion for Leave to Amend Complaint on the final day of discovery in this matter.[3] After Defendants filed their response in opposition, Plaintiffs requested leave to file a reply purportedly to "address certain arguments and misstatements made by Defendants" and also to direct the Court's attention to a recently published book. (Doc. 132.) Thereafter, and prior to the Court's resolution of either of Plaintiffs' pending motions, Plaintiffs filed an "addendum" in which Plaintiffs included references to deposition testimony from Nancy Grace, the decedent's attorney,

---

[2] Count V of Plaintiffs' proposed Amended Complaint appears to closely track the language of Count I of Plaintiffs' Complaint except that it alleges negligent—as opposed to intentional—conduct.

[3] Pursuant to this Court's Order dated December 18, 2009 (Doc. 125), the parties were authorized to conduct the depositions of witnesses specifically designated by the parties outside of the established discovery period due to scheduling issues, but all other discovery was to be completed on or before December 31, 2009.

and Keren Schiffman (a producer of the Nancy Grace Show), as additional "newly discovered" evidence in support of their pending motion for leave to amend. (Doc. 139.)

In response, Defendants requested the Court to strike the "addendum" as an unauthorized "further memorandum" pursuant to Local Rule 3.01(c). (Doc. 140.) In an order entered on February 12, 2010, the Court denied Plaintiffs' request for leave to file a reply, construed Plaintiffs' Addendum as an amendment to Plaintiffs' Motion for Leave to File Amended Complaint, and provided Defendants the opportunity to file a response to the issues raised in the Addendum. Defendants filed a response in opposition addressing the substance of Plaintiff's addendum on February 22, 2010. (Doc. 142.)

## II. **DISCUSSION**

Plaintiffs request leave to file an Amended Complaint to include a claim for negligent misrepresentation and a claim for tortious interference with a police investigation. Although the Federal Rules of Civil Procedure provide that leave to amend pleadings should be freely given where justice so requires,[4] "a motion to amend may be denied on numerous grounds including undue delay, undue prejudice to the defendants, and futility of the amendment."[5]

### A.  *Plaintiffs' Request for Leave to Amend Is Untimely.*

An example of "undue delay" occurs where, as here, the amendment is sought after the expiration of the deadline set forth in the case management and scheduling order and the party requesting the amendment fails to demonstrate good cause for the

---

[4] *See* FED. R. CIV. P. 8 & 15; Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

[5] Maynard v. Board of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003).

belated extension.[6] This good cause standard precludes modification unless the schedule could not "be met despite the diligence of the party seeking the extension."[7] If the court finds that the party lacked due diligence, then the inquiry into good cause is ended.[8]

Pursuant to the original Case Management and Scheduling Order dated November 21, 2008, the deadline for joining parties was December 31, 2008 and the parties were advised that "[m]otions to amend any pleading . . . filed after issuance of this Case Management and Scheduling Order are disfavored." (Doc. 56.) On December 31, 2009, over three years after the initial lawsuit was filed and on the last day of discovery, Plaintiffs filed the instant Motion for Leave to File Amended Complaint. The claim for negligent misrepresentation essentially is based upon the same facts that are plead in both of Plaintiffs' claims for intentional infliction of emotional distress. The other claim - for tortious interference with a police investigation - purports to allege a "cause of action" that even Plaintiffs concede has never been recognized as a valid cause of action by any court.

Plaintiffs have not shown the requisite good cause to justify the proposed amendments this late in the litigation. Plaintiffs explain that their delay was caused by the fact that "[a]s depositions unfold and voluminous documents get sifted through" they

---

[6] Sosa v. Airprint Sys., Inc., 133 F.3d 1417 (11th Cir. 1998).

[7] Sosa v. Airprint Sys., Inc., 133 F.3d 1417 (11th Cir. 1998) (quoting FED. R. CIV P. 16 adv. comm. note).

[8] Id.

have uncovered evidence to support the new allegations. Specifically, Plaintiffs claim that "[t]hey have discovered the negligent conduct through production request to date."

Plaintiffs' argument that the amended claims arose from newly discovered evidence ignores the fact that the underlying substance of the allegations in the proposed amended complaint have not changed.  Indeed, the allegations in the claim for negligent misrepresentation closely track the language from the claims for intentional infliction of emotional distress articulated in the original Complaint.

Furthermore, any delay attributable to Plaintiffs' efforts to "sift through" the voluminous documents produced during discovery cannot constitute the requisite "good cause" because Plaintiffs have failed to demonstrate they acted with due diligence. This is especially true in view of the fact that although counsel for Defendants made the requested documents available to counsel for Plaintiffs as early as April 2009, counsel for Plaintiffs apparently waited until December 2009 to undertake the task of reviewing them. (Doc 133.)

In support of their argument that the proposed amendments are justified based upon the discovery of "new evidence," Plaintiffs also highlight testimony recently elicited during the depositions of three witnesses: Nancy Grace; Kimberly Schulte, the decedent's attorney, and Karen Schiffman, a producer of the Nancy Grace Show. However, contrary to Plaintiffs assertion that this testimony introduced new facts, none of the testimony presented factual information that Plaintiffs did not—or could not—have access to prior to the depositions had Plaintiffs exercised due diligence.

For example, in Plaintiffs' "Addendum" Plaintiff points to testimony from Kimberly Schulte concerning her knowledge of the facts and circumstances surrounding the decedent's interview with the Nancy Grace Show. This is information that Defendants specifically requested[9] from the personal representative of the decedent's estate during formal discovery in December 2008 (over a year before the depositions eventually transpired). Indeed, as evidenced by this Court's resolution of Defendants' Motion to Compel directed to Plaintiff, Kathleen Calvert (the personal representative of the decedent's estate), Ms. Calvert was obligated to conduct reasonable inquiry (including contacting decedent's attorney) on behalf of the decedent's estate in an effort to obtain some of the very information that Plaintiffs now describe as "newly discovered evidence."[10]

With respect to Plaintiffs' proposed claim for interference with a police investigation, counsel for Plaintiffs advises that they recently came up with this new legal theory but offer no explanation for waiting until the last day of discovery to begin exploring this novel "corollary of law." This is not an instance in which the case law has developed over time to reveal a previously unrecognized avenue of relief.[11] Rather, Plaintiffs seek to establish a new cause of action that has not yet been recognized by any court. There is simply no reason Plaintiffs could not have offered this theory two years ago when the case was filed.

---

[9] *See* Doc. 68-1, p.11.

[10] *See* Docs. 68 & 86.

[11] *See, e.g.*, Manhattan Constr. Co. v. McArthur Elec., Inc., 2007 WL 2713250 (N.D. Ga. 2007).

Lastly, in the Court's view amending Plaintiffs' Complaint at this late stage—especially with respect to the proposed allegations of tortious interference with a police investigation—would necessitate additional discovery and cause significant delay in a matter that has already been pending in this Court for several years. Plaintiffs have not pointed to any information that they did not, or could not have known through the exercise of due diligence prior to the close of discovery. As such, no good cause exists justifying leave to amend the lawsuit in the eleventh hour. Moreover, an amendment at this late stage inevitably would prejudice Defendants by requiring them to engage in prolonged litigation. Continuing this litigation unnecessarily does not benefit any of the parties (including the Plaintiffs) and runs counter to the goal of securing the just, speedy and inexpensive determination of this action.

## B. Futility of Proposed Amendments.

In addition to the fact that the request to amend is due to be denied because of Plaintiffs' undue delay and the significant prejudice that would result if Plaintiffs were permitted to assert two additional claims against Defendants at this late date, at least one of the proposed amended claims is futile. Denial of leave to amend is appropriate where the proposed amendments would be subject to dismissal as a matter of law – and thus, futile.[12] An example of such futility would be the failure of a Plaintiff to state a plausible claim for relief in the proposed amendment.[13]

---

[12] Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262 (11th Cir. 2004).

[13] *See,* Twombly, 550 U.S. at 558.

With regard to Plaintiffs' proposed claim for intentional interference with a police investigation, Plaintiffs assert that, "[i]f a party can be held liable for interference with an existing business or contract relationship . . . then it is just as logical and plausible for a party to be liable for interfering with the police and the subjects of their investigations." There are several fundamental problems with the logic of this argument. First, and most notably a cause of action for tortious interference with a police investigation - to the Court's knowledge - has never been recognized by any court of competent jurisdiction. This is no surprise because the appropriate sanction for interfering with a police investigation would be criminal penalties and not recovery for damages through tort law. Second, damages under tort law also would be inapposite because the estate of Ms. Duckett would not have legal standing to request tort damages for the loss of Ms. Duckett's child as a result of the inability of law enforcement to find Ms. Duckett's child. Lastly, unlike the situation with a business relationship, the Plaintiffs do not have any legally cognizable interests in a police investigation. The only entities which might have a legal interest in a police investigation (as opposed to a personal interest) are the agencies actually investigating the crime.  In sum, because a claim for tortious interference with a police investigation fails to state a legally cognizable cause of action against any of the Defendants it would be futile to permit Plaintiff to file the proposed amended complaint to include such a claim.

With regard to the claim for negligent misrepresentation, this claim relies upon the same alleged misrepresentations made to Ms. Duckett about the purpose of the Nancy Grace program, which were included in Count I of the Complaint and which the Court previously found constituted part of the conduct underlying Plaintiffs' claim for intentional infliction of emotional distress. The Court expressly noted on July 30, 2008 in

its Order denying Defendants' Motion to Dismiss that the alleged misrepresentations are part of the facts which allegedly caused the claimed emotional distress by Ms. Duckett and do not support an independent claim for fraudulent misrepresentation. (Doc. 50.) More than eighteen months have passed between the Court's July 8, 2008 Order and Plaintiffs' current request to amend their complaint and no good reason is offered to attempt to refashion the same argument relating to the alleged misrepresentations.

In addition, the discovery taken after the Court's July 2008 Order does not, as Plaintiffs suggest, reveal previously undiscoverable evidence giving rise to the eleventh hour amendment. Rather, the allegation that Ms. Duckett was "tricked" into appearing on the Nancy Grace program appears throughout the Complaint filed in this case in November 2006. As such, there is no good reason to permit Plaintiffs to recast this argument after discovery has ended.[14]

Accordingly, for all of the foregoing reasons, Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 129) is due to be **DENIED**.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 19, 2010.

Copies to:

All Counsel

GARY R. JONES
United States Magistrate Judge

---

[14] Moreover, it appears that the deposition testimony the Plaintiffs rely upon to support their argument that actionable misrepresentations were made to Ms. Duckett, does not support their theory. Rather, the excerpts of the deposition testimony of Kimberly Schulte, Ms. Duckett's divorce attorney, disclose that: (1) Schulte told Ms. Duckett not to appear on the Nancy Grace program; and (2) Schulte never spoke to Ms. Duckett after Schulte spoke to Schiffman, the CNN producer, and Schulte did not speak to Ms. Duckett again until after Ms. Duckett actually appeared on the program. As such, Plaintiffs' attempt to advance this claim at this late stage appears to be a complete waste of time in view of the fact that among other problems with their theory, there is an absence of any evidence of justifiable reliance by Ms. Duckett upon the alleged misrepresentations.