# EXHIBIT 16

# Declaration of Dr. W. Steven Saunders

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

ESTATE OF MELINDA DUCKETT, et al.
Plaintiffs,

v.  CASE NO.: 5:06-cv-444-WTH-GRJ

CABLE NEWS NETWORK LLLP (CNN), et al.
Defendants.
_____/

## DECLARATION OF W. STEVEN SAUNDERS, PSY. D.

Pursuant to 28 U.S.C. § 1746, I declare the following under the penalty of perjury:

1. My name is W. Steven Saunders, I am over the age of 18 and fully competent to make this Declaration.

2. This declaration is based upon personal knowledge and my review of genuine and authentic copies of my business records identified as NPP 0002-0034, DCFS 00539, and B&W Eubank 0293, which are attached as Exhibit A. I certify that the records included in Exhibit A were (i) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (ii) kept under my supervision in the regular course of my psychology practice; and (iii) made as part of the regularly conducted activity of my psychology practice.

3. Exhibit A also includes assignments given to Melinda Duckett as part of her treatment plan and documents reflecting her completion of the assignments. Melinda's assignments were (i) made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those maters; (ii) kept under my supervision in the regular course of my psychology practice; and (iii) made as part of the regularly conducted activity of my psychology practice.

4. Documents in Exhibit A identified as NPP 0030-0034 include statements made by Melinda Duckett for the purposes of her medical treatment and diagnosis describing her medical history and past and current symptoms, which were recorded concurrently to her evaluation.

FURTHER DECLARANT SAYETH NAUGHT

I declare under penalty of perjury that the foregoing is true and correct on this 5th day of March, 2010.

W. Steven Saunders, Psy.D.

# EXHIBIT A
# to Saunders Decl.

# PSYCHOLOGICAL EVALUATION
## CONFIDENTIAL

Patients Name: Melinda Duckett
Date of Birth: August 14, 1985
Age: 19
Date of Evaluation: July 13, 2004
Psychometerist: Danielle Arbutina, Intern

## REASON FOR REFERRAL

Ms. Duckett is a 19 year old married Korean female who self referred for a psychological evaluation to assess her current functioning.

## HISTORY of CURRENT MENTAL STATUS

Ms. Duckett stated that she was Baker Acted on April 30, 2005 after her mother-in-law made allegations that she was harm to herself and her baby. Ms. Duckett denies these claims stating that she had no intentions of harming herself and "would never harm my son." According to Ms. Duckett, she told her boyfriend that she wanted to "end it all" in regards to their relationship. She stated that statement was used out of context to suggest that she was suicidal and harm to her child. She also reported that her history of self-harm was also used to indicate suicidal intention. She claims that at the age of 14 she engaged in cutting to "fit in with the skater crowd." She reported that she never had intentions on killing herself. After examining her arms, there was no indication of ritualistic cutting. She reported that she was very concerned about staying organized and structured throughout her trial. She worried that she would not have "it all together". She feels that this experience has caused an unhealthy amount of stress in her life.

## PROCEDURES EMPLOYED

Clinical Interview
Mental Status Examination
Minnesota Multiphasic Personality Inventory-Second Edition (MMPI-II)
Wechsler Abbreviated Scale of Intelligence (WASI)
Brief Symptom Inventory (BSI)
Collateral Sources: Lifestream Behavioral Center Psychiatric Evaluation

## PERSONAL/SOCIAL HISTORY

Ms. Duckett is the older of two adopted daughters to a Caucasian family. She was told by her parents that she was adopted at a young age, and she stated that this did not negatively affect her. She describes her family as "normal" stating that she had a "pretty average" childhood. She grew-up in New York City, until, at the age of 17 she moved to Florida to live with her adoptive grandparents. Although her family moved a lot, she did not find it difficult to adjust. She described her adopted mother as independent and traditional, who worked as a skip tracer. Her adopted father was described as business oriented. He worked in a chemical plant and owned a car-detailing business. She reported that her relationship with her parents was good and that she willingly participated in the upbringing of her younger adopted sister. She claims that she has always been independent.

Ms. Duckett stated that she achieved honors while in school. Her parents had high academic expectations of Ms. Duckett, but she reported "I liked the acknowledgement I received from others when I did well." She had several different groups of friends while in school, with

NPP 0030

whom she attempted rather intensely to conform. While in school she enlisted in the Army reserve for two months. Following her honorable discharge, she went back to school to graduate her senior year. While in school, she worked part-time. Although not concurrently, she worked at her father's car shop, as clothing retail saleswoman, a gas station attendant, and a receptionist. She is currently working full-time in a hardware retail store.

Ms. Duckett is currently living in a two bedroom apartment. He husband Josh and 11-month old son, Trenton are living separately. Ms. Duckett was impregnated by Josh at the age of 17. Josh was supportive with her pregnancy, but according to Ms. Duckett his mother "disliked anyone that got close to Josh." She claims that her and Josh's relationships suffered due to her accusations and influence over Josh. According to Ms. Duckett, following her mother-in-laws accusations, department of children and families visited and inspected her home and son. The DCF reported, as indicated by Lifestream Behavioral Center and Ms. Duckett that there was no evidence of neglect or abuse of the baby. Their relationship was described as difficult, stating that they would argue and dispute over finances quite frequently. She reported that Josh displayed a "lack of obligation in the beginning of the relationship." Currently, she claims that Josh is working full-time and is "doing his part." She claims that Josh has cut all communication with his mother and grandparents since her trial. Ms. Duckett's pregnancy was reported as normal with no complications. Her son was born weighting 4 pounds 9 ounces. He was treated for jaundice upon birth. He has not sustained any health concerns.

## MEDICAL/ PSYCHIATRIC HISTORY

Currently, Ms. Duckett presented with no health concerns. She eats three meals a day and exercises regularly.

Ms. Duckett reported that while in the first grade she and two other cousins were sexually abused by their 16 year old cousin, who was also their babysitter. This occurred approximately three times, until she told her parents. She did not return to her cousin's house following this incident. Ms. Duckett denies any suicidal or homicidal ideation at this time. She has never attempted suicide, but participated in self-harming behaviors at the age of 14. She claims that she had no intention to kill herself, rather she wanted to show her group of friends that "I can do this better than you can." She stated that she would do this to fit in with her group of friends.

Because Ms. Duckett is adopted she does not have information regarding family medical or psychiatric history. She denies that her adopted family has any emotional problems.

Ms. Duckett stated that her and Josh tried relationship counseling prior to their first separation. She claimed that Josh did not like the therapist so they discontinued treatment. Ms. Duckett stated that her recent experience of being Baker Acted was humiliating and uncomfortable.

## DRUG/ALCOHOL USE

Ms. Duckett denies drug and alcohol use. She claims that she dislikes the taste of alcohol. She has never been intoxicated and has never experimented with illegal drugs. She reported that her family does not have problems with alcohol or drug use.

## BEHAVIORAL OBSERVATIONS

Ms. Duckett appears very willing to please the examiner. She was overtly concerned about her performance on the tests administered to her. For example, prior to administering the WASI she stated, "what will happen if I fail?" She appeared to be overly concerned with whether her answers were correct, and consistently inquired about her performance.

whom she attempted rather intensely to conform. While in school she enlisted in the Army reserve for two months. Following her honorable discharge, she went back to school to graduate her senior year. While in school, she worked part-time. Although not concurrently, she worked at her father's car shop, as clothing retail saleswoman, a gas station attendant, and a receptionist. She is currently working full-time in a hardware retail store.

Ms. Duckett is currently living in a two bedroom apartment. He husband Josh and 11-month old son, Trenton are living separately. Ms. Duckett was impregnated by Josh at the age of 17. Josh was supportive with her pregnancy, but according to Ms. Duckett his mother "disliked anyone that got close to Josh." She claims that her and Josh's relationships suffered due to her accusations and influence over Josh. According to Ms. Duckett, following her mother-in-laws accusations, department of children and families visited and inspected her home and son. The DCF reported, as indicated by Lifestream Behavioral Center and Ms. Duckett that there was no evidence of neglect or abuse of the baby. Their relationship was described as difficult, stating that they would argue and dispute over finances quite frequently. She reported that Josh displayed a "lack of obligation in the beginning of the relationship." Currently, she claims that Josh is working full-time and is "doing his part." She claims that Josh has cut all communication with his mother and grandparents since her trial. Ms. Duckett's pregnancy was reported as normal with no complications. Her son was born weighting 4 pounds 9 ounces. He was treated for jaundice upon birth. He has not sustained any health concerns.

## MEDICAL/ PSYCHIATRIC HISTORY

Currently, Ms. Duckett presented with no health concerns. She eats three meals a day and exercises regularly.

Ms. Duckett reported that while in the first grade she and two other cousins were sexually abused by their 16 year old cousin, who was also their babysitter. This occurred approximately three times, until she told her parents. She did not return to her cousin's house following this incident. Ms. Duckett denies any suicidal or homicidal ideation at this time. She has never attempted suicide, but participated in self-harming behaviors at the age of 14. She claims that she had no intention to kill herself, rather she wanted to show her group of friends that "I can do this better than you can." She stated that she would do this to fit in with her group of friends.

Because Ms. Duckett is adopted she does not have information regarding family medical or psychiatric history. She denies that her adopted family has any emotional problems.

Ms. Duckett stated that her and Josh tried relationship counseling prior to their first separation. She claimed that Josh did not like the therapist so they discontinued treatment. Ms. Duckett stated that her recent experience of being Baker Acted was humiliating and uncomfortable.

## DRUG/ALCOHOL USE

Ms. Duckett denies drug and alcohol use. She claims that she dislikes the taste of alcohol. She has never been intoxicated and has never experimented with illegal drugs. She reported that her family does not have problems with alcohol or drug use.

## BEHAVIORAL OBSERVATIONS

Ms. Duckett appears very willing to please the examiner. She was overtly concerned about her performance on the tests administered to her. For example, prior to administering the WASI she stated, "what will happen if I fail?" She appeared to be overly concerned with whether her answers were correct, and consistently inquired about her performance.

MENTAL STATUS EXAMINATION

Ms. Duckett appeared her stated age of 19. She was well-groomed and practiced good hygiene. She stands 4' 10" tall weighting 94 pounds. Her motor behavior appeared normal. Her speech patterns were clear and normal and her mood appeared pleasant. Her affect was within the normal range. There was no difficulty in thought form or content. This was evidenced by her logical and coherent pattern of responding. Perception was within normal limits.

Ms. Duckett was alert and responsive throughout the interview and was oriented to all spheres. Memory for remote, recent and immediate recall appears to be intact. She appears to display a High average level of intelligence, and displays good insight and good judgment.

COGNITIVE AND INTELLECTUAL FUNCTIONING

Ms. Duckett was administered the Wechsler Abbreviated Scale of Intelligence (WASI) in a standardized testing environment, and her obtained profile appears to be a valid representation of her estimated measure of intelligence. Her Full Scale IQ of 119 places her in the High Average range of measured intelligence with a 95 out of 100 chance that she falls within the 115-123 range. Her Verbal IQ of 116 places her in the High Average range with a 95 out of 100 chance that she falls within the 110-121 range. Her Performance IQ of 118 which places her in the High Average range with a 95 out of 100 chance that she falls within the 112-123 range. There appears to be no significant difference in the Verbal and Performance scores.

Ms. Duckett appears to be equally well-developed in her ability to verbally express and experience situations. She demonstrated the knowledge and understanding of social situations and standards of society. She is well-developed in her ability to articulate and comprehend verbal stimuli which enhances her ability to work in her costumer service field and establish functional relationships with others. Her ability to perceive her environment in a meaningful way also assists her in formulating adequate judgments and understanding standards of society. There is a slight possibility that her need to excel may hinder her performance and ability to be flexible in situations that are ambiguous. This was evidenced by her persistent questioning regarding her performance and her overt preoccupation with her performance on all administered assessments.

PERSONALITY FUNCTIONING

Ms. Duckett was administered the MMPI-II in a standard testing environment. The obtained profile for this particular test appears invalid. It appears to be invalid based on an attempt by Ms. Duckett to appear better than she may actually be. However, the overall assessment is more than adequate to obtain an understanding of Ms. Duckett's personality. Additionally, some qualitative data was obtained based upon her interview and this style of responding. According to the MMPI profile Ms Duckett presents herself in a manner which tends to portray someone who is attempting to appear composed, calm and collected. Her pattern of responding may reflect a desire to keep personal faults and self-doubts to a minimal, in hopes that others do not notice. This presentation is consistent with her reports that she was concerned about having "it all together" during her trial. Her self-harming behaviors also reflect a need to excel above others. She stated that she cut herself to demonstrate that "I can do this better than you can." Her tendency to minimize her symptoms is consistent with Lifestream Behavioral Center's Psychiatric evaluation. Because of her pattern of responding to the MMPI, that particular test profile is not interpretable.

According to the BSI, Ms. Duckett's profile is not of a nature or magnitude to be considered in the clinical range. General symptomatic distress levels appear to be in the average range.

## SUMMARY

Ms. Duckett is a 19 year-old single married Korean female who self referred for a psychological evaluation. Ms. Duckett appears to function at a high level. It appears that she has a motivation to excel and is determined to maintain high standards, despite obstacles that she may encounter. Her Full scale IQ of 119 is within the High Average Level of intelligence. Her intelligence level demonstrates an ability to easily manage both verbal and non-verbal tasks with ease. It appears that her anxiety regarding her performance and whether she is meeting appropriate expectations may hinder her abilities. Based on this assessment and collateral evaluations, she demonstrated an unrelenting desire to appear collected and organized. Because of this she likely minimizes her symptoms. This may create a vulnerability to undesired stress. Her independent and self-sufficient demeanor perhaps sustains this presentation. This tendency to appear flawless may also be in response to the recent accusations brought against her as an unfit mother. However, her need to please others and appear exceptional may act more prominently in her daily life.

Ms. Duckett demonstrated several strengths. She is fully capable and has demonstrated an ability to hold a stable job. Her goals for the future are highly attainable, which demonstrates adequate planning skills. She also appears to be healthy and denies use of alcohol or drugs. Based on the present evaluation prognosis appears good.

## DIAGNOSTIC IMPRESSIONS

Ms. Duckett does not appear to be experiencing distress. There appears to be no indication of an Axis I or Axis II disorder. However, her pattern of responding may demonstrate some difficulties with perfectionism and organization. This may compromise her ability to be flexible in relations with others. She appears to functioning well in her environment and there is no indication of neglect on her part.

Axis I    V71.09 No Diagnosis or Condition on Axis I
Axis II   Obsessive Compulsive Personality Features (due to overachievement).
Axis III  None Reported
Axis IV   Problems with primary support group, psychosocial stressors
Axis V    GAF = 75 (current)

## RECOMMENDATIONS

1. It is recommended that Ms. Duckett seek out couples counseling to address some anger and resentment that she may be experiencing in regard to her recent difficulties with her husband.
2. Ms. Duckett's need to maintain a level of independence and excellence may be hindering her ability to be flexible in relationships with others It is recommended that Ms. Duckett attend social skills training to address these concerns.
3. There is no psychological reason that would preclude Ms. Duckett from being a capable and loving parent to her son. Reunification with her son would likely benefit her greatly as well as help to support the mental stability of her son.

Psychometrist: Danielle Arbutina  _____ B.A.

Supervising Psychologist: Dr. Steven Saunders _____ Psy. D, PY6174

NPP 0034

# ADDENDUM TO PSYCHOLOGICAL EVALUATION DATED July 13, 2005
Date of Completion of all tasks: January 30, 2006

SUMMARY: Ms. Duckett is a 20 year-old single separated Korean female who self referred for a psychological evaluation last year. Subsequently, she has returned for therapy and counseling due to court and DCF requirements. She completed courses in ANGER MANAGEMENT and CO-DEPENDENCY from this office. Ms. Duckett appears to function at a high level. It appears that she has a motivation to excel and is determined to maintain high standards, despite obstacles that she may encounter. Ms. Duckett demonstrated several strengths. She is fully capable and has demonstrated an ability to hold a stable job. Her goals for the future are highly attainable, which demonstrates adequate planning skills. She also appears to be healthy and denies use of alcohol or drugs. Based on the present evaluation and follow-up sessions, her prognosis appears good.

## DIAGNOSTIC IMPRESSIONS

Ms. Duckett does not appear to be experiencing distress. There appears to be no indication of an Axis I or Axis II disorder. She appears to functioning well in her environment and there is no indication of neglect on her part.

Axis I    V71.09 No Diagnosis or Condition on Axis I
Axis II   Perfectionist Personality Features (due to overachievement).
Axis III  None Reported
Axis IV   No current psych-social stressors evident
Axis V    GAF = 85 (current)

## RECOMMENDATIONS

1. Ms. Duckett completed all recommendations of this writer and all requirements of the court.
2. There are no further recommendations nor mandatory tasks due to complete. Ms. Duckett has completed therapy and counseling.

Psychologist: Dr. Steven Saunders _____ Psy. D, PY6174

DCFS 00539

**Central Florida Psychological Consultants, Inc.**
W. Steven Saunders, Psy.D.
PO Box 490134
1411 E Main St., #3, Leesburg, FL 34749
(352)406-0506
psychologist3@yahoo.com

November 14, 2005

Melinda Duckett
PO Box 493206
Leesburg, FL 34749

Dear Melinda:

With the completion of your Anger Management course you are now finished with all recommendations from this office. I have no further recommendations for you and wish you well with your future endeavors. Please let me know if I can be of further service.

Sincerely,

W. Steven Saunders, Psy.D.
Licensed Psychologist, PY 6174

B&W EUBANK0293

