# EXHIBIT 17

Deposition of Susan Gregory, Lifestream Behavioral Center

```
                               GREGORY SUSAN LEE.txt
0001
   1               UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
   2                      OCALA DIVISION
   3   ESTATE OF MELINDA DUCKETT, by and
       through her personal representative,
   4   KATHLEEN CALVERT and BETHANN EUBANK
       and WILLIAM GERALD EUBANK, as legal
   5   parents of MELINDA DUCKETT, and as
       grandparents and next friends of T.D.,
   6   a child, and M.E., a minor sibling of
       MELINDA DUCKETT,
   7
              Plaintiffs,
   8
   9   vs.                     CASE NO. 5:06-cv-444-Oc-10GRJ
  10   CABLE NEWS NETWORK, LLP (CNN),
       a Delaware corporation, NANCY
  11   GRACE, individually and as an
       Employee/agent of CNN, various
  12   unnamed producers of the "Nancy Grace"
       show, JOSHUA DUCKETT,
  13
       ----------------------------------------------------
  14
  15                                     December 21, 2009
                                         1:18 p.m.
  16
  17
  18         The deposition of SUSAN LEE GREGORY, taken
  19   on behalf of the Defendants, at Lifestream
  20   Behavioral Center, 515 Main Street, Leesburg,
  21   Florida 34748, before Stacey Walters, Court
  22   Reporter and Notary Public, in and for the State
  23   of Florida at Large.
  24
  25
0002
   1   A P P E A R A N C E S:
   2
   3       JAY PAUL DERATANY, ESQUIRE
           Deratany, Skorupa & O'Hara, LLP
   4       Crystal Tree Office Center
           1201 U.S. Highway One
   5       Suite 315
           North Palm Beach, Florida 33408
   6       561-624-7989
   7            Representing the Plaintiffs
   8
   9
  10       JUDITH M. MERCIER, ESQUIRE
           Holland & Knight, LLP
  11       200 South Orange Avenue
           Suite 2600
  12       Orlando, Florida 32801
  13            Representing the Defendants
  14
  15   ALSO PRESENT:  Tim J. Camp
  16
  17
  18
  19
  20
  21
  22
  23

                               Page 1
```

GREGORY SUSAN LEE.txt

```
24
25
0003
 1                    TABLE OF CONTENTS
 2   SUSAN LEE GREGORY:                              PAGE
     December 21, 2009
 3
     Appearances                                        2
 4   Exhibits                                           3
     Stipulations                                       4
 5
     Testimony of Susan Lee Gregory:
 6
          Direct Examination by Ms. Mercier            5
 7
     Certificate of Oath                               13
 8   Certificate of Reporter                           14
 9
10
11
12
13
14
15                    E X H I B I T S
16                 (Retained by counsel)
17   Gregory exhibits
     for identification:
18
19   No. 1      File 1                                 11
     No. 2      File 2                                 11
20   No. 3      File 3                                 11
21
22
23
24
25
0004
 1
 2
 3
 4
 5
 6                  S T I P U L A T I O N S
 7        It is hereby stipulated and agreed by and between
 8   counsel present for the respective parties and the
 9   deponent that the reading and signing of the
10   deposition is expressly waived.
11
                         (End of stipulation)
12
13
                          *  *  *  *  *
14
15   Reporter's key to punctuation:
16   --    at the end of question or answer references an
           interruption.
17
     ...   references a trail-off by the speaker.
18         no testimony omitted.
19   "uh-huh"  references an affirmative sound.
     "uh-uh"   references a negative sound.
20
21
22
23
24
```

Page 2

GREGORY SUSAN LEE.txt

```
25
0005
 1                   P R O C E E D I N G S
 2                     SUSAN LEE GREGORY,
 3       having been duly sworn by the reporter, thereupon
 4       testified upon her oath as follows:
 5                     DIRECT EXAMINATION
 6    BY MS. MERCIER:
 7         Q.   Can you state your full name for the record,
 8    please?
 9         A.   Susan Gregory.
10         Q.   And what is your -- who are you employed
11    with?
12         A.   Lifestream.
13         Q.   Okay.  Lifestream Behavioral Center?
14         A.   Yes.
15         Q.   Okay.  And what is your position?
16         A.   Health information management director.
17         Q.   And what does that position entail?
18         A.   Medical records department.  I supervise the
19    medical records department.
20         Q.   And how long have you had that position?
21         A.   Three weeks.
22         Q.   And what did you do before that?
23         A.   I worked for Lifestream in the family care
24    management department as their quality improvement
25    person.
0006
 1         Q.   And how long were you in quality
 2    improvement?
 3         A.   Three months.
 4         Q.   And prior to that?
 5         A.   Kids Central.
 6         Q.   Is that a different --
 7         A.   Kids Central, Incorporated.  That was the
 8    parent for that contract, the parent company.
 9         Q.   Are you familiar with how Lifestream
10    maintains their records?
11         A.   I'm becoming very familiar with how
12    Lifestream maintains their records, yes.
13         Q.   Was there a person in your position prior to
14    you taking over?
15         A.   Yeah.  I believe her name was Shelly
16    Figueroa.
17         Q.   And do you know why she's not in that
18    position any longer?
19         A.   I understand she was --
20              MR. DERATANY:  Relevance.
21    BY MS. MERCIER:
22         Q.   You can answer the question.
23         A.   I believe she was either discharged or
24    resigned.  I'm not positive.
25         Q.   She's not with the company any longer?
0007
 1         A.   She's not with the company any longer.
 2         Q.   Okay.  And do you know when that was?
 3         A.   No.
 4         Q.   You said you're getting yourself familiar to
 5    the way records are kept in --
 6         A.   Right.  I've only been in the position three
 7    weeks.
 8         Q.   So what are you doing to get yourself
 9    familiar with how records are kept?
10         A.   I'm actually following the process with
11    them, meeting with the directors of nursing and the
12    clinicians and my boss, reviewing process systems and
```

GREGORY SUSAN LEE.txt
```
13   determining what needs to be changed or what's working
14   well.
15        Q.   Okay.  And who is your boss?
16        A.   My boss is Rick Hankey.
17        Q.   Okay.  Is there, like, a procedures manual
18   that you're following?
19             MR. DERATANY:  Why didn't you ask me to
20        stipulate?  Do you really want to do this
21        deposition?
22             MS. MERCIER:  Jay, I'm doing the deposition
23             MR. DERATANY:  I'm asking you.  I'm offering
24        to stipulate.  Are you trying to lay a foundation
25        for the records?
0008
 1             MS. MERCIER:  If you're stipulating to the
 2        authenticity of the records, great.
 3             MR. DERATANY:  If we look through them, I
 4        can probably do that.  If you want to spend an
 5        hour authenticating records, it's your choice.
 6        We can probably take a look at them and ask her a
 7        few questions.
 8   BY MS. MERCIER:
 9        Q.   Okay.  Can you show me what you have with
10   you today?
11        A.   Sure.  This (indicating) was the receipt
12   from the original request and these (indicating) are
13   the files I copied.  (Tenders to Attorney Deratany.)
14   They were in three separate files, which is why I have
15   them separated.
16             MR. DERATANY:  Do you want me to read out
17        loud so that you have what is here?  Subpoena, a
18        records request from Holland & Knight dated
19        6/12/09, a letter from Kathy Sexton from Holland
20        & Knight, medical records, a checklist.
21             Well, the checklist has everything stated
22        except one of the physician's notes.  There
23        appear to be records pertaining to -- mental
24        health records pertaining to Melinda Eubank.  The
25        next set seems to appear to be dated 9/11/06,
0009
 1        discharge summary psych evaluations, additional
 2        records pertaining to Melinda Eubank.  And the
 3        third set appears to be additional records
 4        pertaining to Ms. Eubank and another copy of the
 5        subpoena.
 6             Without waiving any other objections, I
 7        might or may not have yet -- I don't know --
 8        pertaining to mental health or pertaining to
 9        HIPAA or pertaining to any other issues, I don't
10        think I'm going to make any objection if the
11        witness says these are in the ordinary course of
12        business, that she's made a search of the records
13        and these are her records.  I will not object
14        based upon this institution, Lifestream, saying
15        that these are all of the records of Melinda
16        Duckett.
17             Due to that, if that shortens the
18        deposition, if you want to ask if there's
19        anything else, go for it.  That's my offer.  And
20        I do want a copy of those.
21   BY MS. MERCIER:
22        Q.   The records that you've brought with you
23   today relate to Melinda Duckett?
24        A.   Yes.
25        Q.   Okay.  And did you personally do anything to
0010
```

Page 4

```
                              GREGORY SUSAN LEE.txt
 1   search for these records?
 2        A.   I spoke to Mr. Camp, who provided me the
 3   files. I then personally copied them myself to make
 4   sure that everything that was contained in the files
 5   was brought to you.
 6        Q.   And this is what is represented in these
 7   three packages, everything that you have in the files?
 8        A.   Yes.
 9        Q.   And why were they in three different sets?
10        A.   I don't know. That's what was given to me
11   out of lock-up.
12        Q.   Okay. You don't know why they were in three
13   different sets?
14        A.   No.
15        Q.   Did you review the documents?
16        A.   I looked at them, but I'm medical records,
17   I'm not a psychologist or psychiatrist, so I didn't
18   have a need to read the whole thing.
19        Q.   Okay. And you don't know enough about the
20   procedures -- or let me ask you, Do you know the
21   procedures of what each form represents and why it
22   would have been done?
23        A.   No.
24        Q.   You don't have any of that information?
25        A.   No.
0011
 1        Q.   Okay. And these are copies?
 2        A.   Yes. And what I did was initialed it was me
 3   that did them and the date that I copied them.
 4        Q.   Those are your initials on each page?
 5        A.   No, on each --
 6        Q.   The front of each package?
 7        A.   Yes.
 8        Q.   File 1, File 2, and File 3?
 9        A.   Yes. In other words, I didn't give the work
10   to my tech to do. I completed it myself to make sure
11   that every document was copied.
12        Q.   Okay. And so as to substance of anything
13   that's in here, you can't talk about at all? You
14   don't have any information?
15        A.   No, ma'am.
16        Q.   Okay. Or the procedures for the company?
17        A.   No.
18             MS. MERCIER: All right. Then I'm going to
19        go ahead and mark these, the Files 1, 2, 3, as
20        Exhibits 1, 2, 3 for the record.
21        (Defendants' Exhibit Nos. 1, 2, and 3 were marked
22   for identification.)
23             MS. MERCIER: And you said you have no
24        objection to the authenticity of these records?
25             MR. DERATANY: I have no objection to the
0012
 1        witness stating she's done a diligent search and
 2        to the best of her knowledge those are the
 3        authentic records of the institution. I'm not
 4        going to make an authenticity objection that
 5        those are the records regarding content. Any
 6        other objection, hearsay and so forth, I reserve.
 7             MS. MERCIER: Okay. That's all I have.
 8        (The deposition concluded at 1:31 p.m.)
 9
10
11
12
13
14

                                   Page 5
```

```
                          GREGORY SUSAN LEE.txt
15
16
17
18
19
20
21
22
23
24
25
0013
 1                        CERTIFICATE OF OATH
 2    STATE OF FLORIDA
      COUNTY OF ORANGE
 3
            I, Stacey B. Walters, do hereby certify that
 4    I placed under oath the Deponent, SUSAN LEE GREGORY,
      at the time and place herein designated.
 5
            WITNESS MY HAND AND OFFICIAL SEAL this 22nd
 6    day of February, 2010.
 7
 8                          STACEY B. WALTERS
                            Court Reporter, Notary Public,
 9                          State of Florida at Large
10                          Commission # DD 680636
                            Expires: August 30, 2011
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
0014
 1                       CERTIFICATE OF REPORTER
 2    STATE OF FLORIDA
      COUNTY OF ORANGE
 3
 4          I, STACEY B. WALTERS, Certified Shorthand
 5    reporter, certify that I was authorized to and did
 6    stenographically report the foregoing proceedings at
 7    the time and place herein designated; and that the
 8    foregoing pages 5 through 12, inclusive, constitute a
 9    true, complete and accurate transcription of my said
10    stenotype notes.
11          I further certify that I am not of counsel
12    for, related to, or employed by any party hereto or
13    attorney involved herein, nor am I financially
14    interested in the outcome of this action.
15          Witness my hand this 22nd day of February,
16    2010.
17
18
19
                                     STACEY B. WALTERS
```



## LIFESTREAM BEHAVIORAL CENTER
## INPATIENT PSYCHIATRIC EVALUATION

**CLIENT NAME:** Eubank, Melinda
**MIS #:** 46667
**ADMISSION DATE:** 4-30-05
**CASE #:** 53322

**UNIT:** PSYC

**IDENTIFICATION DATA:** This is a 19-year old Korean female who was brought in under a Baker Act because she made a statement about "ending it all."

**REASON FOR EVALUATION:**

**HISTORY OF PRESENT ILLNESS:** She seemingly was out of control. This occurred in a phone conversation with her boyfriend who reported this to the police. The patient denied being suicidal. She is hurt and angry with several issues related to conflicts with her boyfriend. They have a son together who is 9 months old. She is ready to finish all relationship with this gentleman who still wants to maintain control over her. She is very resentful that he keeps on acusing her and manipulating her. She worries about her son. She denies being depressed. She still admits to angry issues with the boyfriend that she is ready to resolve.

**PSYCHIATRIC HISTORY:** None.

**SUBSTANCE ABUSE HISTORY:** Denied.

**MEDICAL HISTORY:** She had eye surgery because of a cyst removed under her eye.

**CURRENT MEDICATIONS:**

**ALLERGIES: SEASONAL, PENICILLIN, SULFA.**

**FAMILY HISTORY:**

SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is **not** sufficient for this purpose.

**SOCIAL HISTORY:** The patient was born in South Korea. She was adopted through the Love Program for Children and came to this country at the age of 4 months. She lived with them until the age of 17. There were numerous arguments with her mother. She denied any trauma, losses, or abuse. She was a good student. She got a scholarship when she finished high school. She obtained a job working in a hardware supply store. She appeared very competent in dealing with her job. She did admit to numerous conflicts with her boyfriend and the police being involved. She is going to end this relationship.

INPATIENT PSYCHIATRIC EVALUATION
PAGE 2                                                         Eubank, Melinda

## MENTAL STATUS EXAMINATION:

**PATIENT'S ASSETS:** Capable of introspection and insight, and willing to sign in voluntarily.

**PATIENT'S LIABILITIES:** Relationship with boyfriend, single mother.

## DIAGNOSIS:

- **AXIS I:** Depressive disorder not otherwise specified.
- **AXIS II:** Deferred.
- **AXIS III:** Within normal limits.
- **AXIS IV:** Psychosocial Stressors: Relationship problems with boyfriend, moderate.
- **AXIS V:** Current Year Global Assessment of Functioning: 45

  Past Year Global Assessment of Functioning:

## TREATMENT PLAN AND RECOMMENDATIONS:

1. The patient is willing to sign in voluntarily.
2. Observation for another 24 hours to rule out any impulsive behavior, violent outbursts, or suicidal ideation.
3. The patient refused any antidepressant medication.
4. She was admitted to the PCU.
5. Referred for a history and physical examination.
6. Regular diet.
7. The patient was placed on suicide precautions.

_____       _____
Alfredo J. DoPico, M.D.                                 DATE

AJD:cp

DOD: 4-30-05
DOT: 5-02-05

SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is not sufficient for this purpose.

GEN-535 N 07/03          NPP 0567          CONFIDENTIAL AND PRIVILEGED
                                                                                                For Professional Use Only



SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is not sufficient for this purpose.

## LIFESTREAM BEHAVIORAL CENTER
### HISTORY AND PHYSICAL EXAMINATION

**CLIENT NAME:** MELINDA EUBANK
**PROGRAM/UNIT:** PSYC
**MIS #:** 46667

**ADMISSION DATE:** 4/30/05
**H&P DATE:** 4/30/05
**CASE #:** 55322

### MEDICAL HISTORY

**CHIEF/PRESENTING COMPLAINT:** This is a 19-yr-old single Asian female admitted on 4/30/05 for evaluation of depression with suicidal ideation.

**CURRENT MEDICAL COMPLAINTS:** None

**PAST MEDICAL HISTORY:** Significant for psoriasis, childbirth 9 months ago. The patient denies any surgeries or major illnesses.

**ALLERGIES:** PENICILLIN AND SULFUR

**MEDICATIONS:** None

**SOCIAL HISTORY:** She is single. She smokes rarely. Denies any substance abuse.

### REVIEW OF SYSTEMS

**HEENT:** The patient denies headaches. Denies hearing loss. Has good vision, does not wear glasses. Denies congestion, sore throat, or difficulty swallowing.

**RESPIRATORY:** No shortness of breath or cough.

**CARDIOVASCULAR:** Denies chest pain or palpitations.

**GASTROINTESTINAL:** Denies nausea, vomiting, diarrhea and constipation.

**GENITOURINARY:** Denies dysuria or frequency. LMP now, Gravida 1, para 1, AB0.

**MUSCULOSKELETAL:** Denies neck, back or extremity pain.

**NEUROLOGICAL:** No history of seizures, numbness, paresis, paresthesias, or vertigo.

### PHYSICAL EXAMINATION

**GENERAL:** This is a 19-yr-old Asian female in no acute distress, pleasant and cooperative with examination. Skin warm and dry, color is good.

**VITAL SIGNS:** BP: 132/76   T: 100   P: 76   R: 18   Ht: not ducomented   Wt: 88 lbs.

**HEENT:** HEAD: Normocephalic, atraumatic. EARS: Normal EACs and TMs bilaterally. EYES: PERRLADC. EOMI. Fundi not visualized. Sclerae anicteric. NOSE: Patent without discharge. MOUTH/PHARYNX: Normal. No erythema, lesions, or discharge noted.

**NECK:** Supple. Trachea is midline. No lymphadenopathy palpated.

**CHEST:** Clear to auscultation. Breath sounds are noted in all lung fields. No wheezes, rales, or rhonchi.

**CARDIOVASCULAR:** Regular rate and rhythm. Normal S1 and S2, without murmur, gallop, click, or rub.

**ABDOMEN:** Soft, nontender to palpation. Bowel sounds present in all quadrants. No masses or organomegaly palpated. No CVA tenderness.

**GENITOURINARY:** Deferred (not indicated at this time).

**MUSCULOSKELETAL:** Some scaling of both hands, palmar surface and across the knuckles dorsally. Psoriatic patch noted on her knees anteriorly, otherwise no obvious joint swelling or erythema or lesions seen. Normal ambulation.

**NEUROLOGICAL SCREENING:** Cranial nerves II-XII grossly intact.

| | |
|---|---|
| CNII | Vision intact |
| CNIII | Eyes are able to: abduct, elevate, intort, adduct, depress, extort, adduct, elevate, extort, abuct, elevate upper lid. |
| CNIV | Eye is able to depress, intort, abduct. |
| CNV | Equal bite strength R/L, sensation of face intact. No deviation of jaw. |
| CNVI | Eye is able to abduct R/L. |
| CNVII | No facial paralysis or facial droop. |
| CNIX | (+) Gag reflex |
| CNX | No dysphoria, dysarthria or dysphagia. |
| CNXI | Patient is able to elevate shoulders equally R/L |
| CNXII | No tongue deviation IPSI laterally. |

**ASSESSMENT**
1.  This is a 19-yr-old Asian female with psoriasis.

**PLAN**
1.  Hydrocortizone 1% cream apply to rash once a day p.r.n.
2.  Follow up medical complaints as they arise

SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is **not** sufficient for this purpose.



## LIFESTREAM BEHAVIORAL CENTER
## DISCHARGE MANAGEMENT NOTE

**CLIENT NAME:** Eubank, Melinda
**MIS #:** 46667
**ADMISSION DATE:** 4-30-05
**DISCHARGE DATE:** 5-01-05
**CASE #:** 55322

SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is **not** sufficient for this purpose.

**DATA:** The patient is a 19-year old Korean oriental female who had conflicts with her boyfriend. She remained hospitalized for a day and she denied any suicidal or homicidal ideation or confusion. In the unit she was coherent. She had a good plan for her future, and had good coping skills in relationship with how to deal with her boyfriend and her concerns of the 9 month infant. Her speech was coherent. her mood was coherent with the subjects discussed. There were no difficulties with her behavior in the unit.

**ASSESSMENT:**

> **AXIS I:** Depressive disorder not otherwise specified.
>
> **AXIS II:** Deferred.
>
> **AXIS III:** Psoriasis.
>
> **AXIS IV:** Psychosocial Stressors: Conflict with boyfriend.
>
> **AXIS V:** Current Year Global Assessment of Functioning: 60
> Past Year Global Assessment of Functioning:

**PLAN:** The patient is to continue with her family doctor for her psoriasis. I suggested outpatient co-joined sessions to deal with her conflicts with her boyfriend. The patient plans to return back to work on Monday.

_____
Alfredo J. DoPico M.D.

AJD: cp

5/10/05
DATE

DOD: 5-01-05
DOT: 5-10-05

---

GEN509-B:N:07/03    NPP 0573    CONFIDENTIAL AND PRIVILEGED
For Professional Use Only

*LifeStream Behavioral Center*

## ACCESS CENTER EVALUATION

| | | | |
|---|---|---|---|
| Name: MELINDA EUBANK | MIS: 46667 | Case #: 55322 | Eval Date/Time: 4/30/05  12:00 am |

Program: Inpatient PCU/ACU  
Ref. By: Other PD  
Current client at: Inpatient PCU/ACU

Client Desc:   19 YO SKF  
Legal Status:   Responsible for self  
CM/Therapist:

**Presenting Problem**

Cl presents as a 19 yo Korean sf BA52 by Officer J Hoover, Bushnell Police Dept and transported by the same. BA52 reads "Subject made stated that she woud "end it all" and seemed to be out of control and distraught." Bushnell Police Dept Witness Statement made by Chief of Police, Joyce Wells, reads "I was standing near Josh Duckett and he was on the telephone (cell) with speaker phone with his girlfriend Melinda Eubanks. She is known to me. I heard her very distraugh screaming then very slow deep sighing she can't take anymore she is going to end it. I have had for past week and especially now concern on 9 month infant. She continued waiving between hysterics and haust incoherent speech. She repeated she would end it. Never saying what or what manner. As a law enforcement officer her mental condition and anquish she is suffering tonight over her boyfriend/father of child finding out she had sexual relations with another has excellerated her mental state of mind.

Cl states she and her boyfriend are frequently into arguments and the police are involved. Cl stated that when she said she was going to end it she only meant end the relationship, job and living environment.

Cl admitted under BA52 for psychiatric evaluation, treatment and observation.

*History of Problem & Past Treatment*
    Cl denies any past hx of mental health treatment

**Suicide Assessment**

| | |
|---|---|
| Suicide Ideation: | denies |
| Plan/Means: | denies |
| History of Attempts: | denies |
| Family History: | denies |
| Level of Risk: | None |

SUPER CONFIDENTIAL
Not to be released without specific
written consent of the patient.
… general authorization for
… not sufficient
… purpose.

*Recommend suicide precautions?* No

**Mental Status**

| | | | |
|---|---|---|---|
| Appearance | Neatly dressed | Delusions | None evident |
| Psychomotor activity | Normal activity level | Orientation | Oriented x3 |
| Speech | Normal volume and pace | Intelligence | Average |
| Affective expression | Appropriate | Memory | Adequate short and long-term m |
| Mood | Anxious | Judgement | Fair judgement |
| Thought processes | Normal | Insight | Fair insight |
| Thought content | Appropriate to topic | Sleep patterns | Normal sleep patterns |
| Hallucinations | None evident | Appetite changes | Normal appetite |
| Comments | | | |

NPP 0791

## ACCESS CENTER EVALUATION

Name: MELINDA EUBANK    MIS: 46667    Case #: 55322    Eval Date/Time: 4/30/05 12:00 am

### Spiritual Assessment

| | |
|---|---|
| How often does client feel guilty over past behaviors? | Sometimes |
| Does anger or resentment block his/ peace of mind? | Never |
| Does client feel life has no meaning or purpose? | Never |
| Does client feel God/Life has treated him/her unfairly? | Sometimes |
| How often does client feel hopelessness, despair or grief? | Sometimes |

### HIV Assessment

Has client had any blood transfusions?   Unknown
*Is client concerned about ...*
   HIV risk? ........................................... No
   Unprotected sex with multiple partner   No
   Intravenous drug use?   No
   His/her sexual orientation?   No

### TB Assessment

Has client been exposed to a person with active TB?  Unknown
*Client complains of:*

### Substance Abuse

| | |
|---|---|
| Substance choice | denies |
| Last use | denies |
| Amount/pattern of use | denies |
| Associated problems | denies |
| Duration of abuse | denies |
| Detox concerns | denies |
| Other substance abuse | denies |

SUPER CONFIDENTIAL
Not to be released without specific written consent of the patient. A general authorization for release is not sufficient for this purpose.

### Pain Assessment

Is client experiencing pain? ....... None
If client does have pain, location:
Severity rating on scale of 1-10:
How is the pain being managed?

### Threat of Violence/Homocide Assessment

Ideation: denies
Plan: denies
Means: denies
History: denies
Risk: None

**Medical Concerns:**   psorsiasis
Current Medications:

NPP 0792

## ACCESS CENTER EVALUATION

Name: MELINDA EUBANK    MIS: 46667    Case #: 55322    Eval Date/Time: 4/30/05 12:00 am

Allergies: sulfar, pcn
Emergency Notes: *****************SUICIDAL IDEATIONS*********************

**Living Environment:** Cl lives in Bushnell in a one bedroom apartment with her 8 1/2 month old son. Cl has a cockatiel.

**Initial Psychosocial:** Cl was born in South Korea, adopted at four months though a program Love the Children, flew to Lockport NY, lived there until age 17. Cl came to Fl on her 17th birthday to attend Forensic School. Cl Cl states she and her parents were not getting along so she came to Villages with her grandparents. Cl became pregnant and moved to Bushnell with child's fx. Cl is not aware of her biological parents. Cl states between kindergarten and 1st grade cl was sexually molested by a cousin. Cl states there was a lot of verbal abuse in the family while she was growing up. Cl states she has a younger sibling that was also adopted at age 4 months.

Need for family involvement in treatment?   Recommended

**Evaluator's Conclusions and Disposition**

BA52 reads "Subject made stated that she woud "end it all" and seemed to be out of control and distraught." Bushnell Police Dept Witness Statement made by Chief of Police, Joyce Wells, reads "I was standing near Josh Duckett and he was on the telephone (cell) with speaker phone with his girlfriend Melinda Eubanks. She is known to me. I heard her very distraugh screaming then very slow deep sighing she can't take anymore she is going to end it. I have had for past week and especially now concern 9 month infant. She continued waiving between hysterics and haust in Not to be released She repeated she would end it. Never saying what or what manner. As a law enforcement officer her consent of the patient anguish she is suffering tonight over her boyfriend/father of child finding out she had general authorization other has excellerated her mental state of mind. release is not sufficient for this purpose.

Cl states she and her boyfriend are frequently into arguments and the police are involved. Cl stated that when she said she was going to end it she only meant end the relationship, job and living environment.
Cl admitted under BA52 for psychiatric evaluation, treatment and observation.

## DIAGNOSIS

**ICD9**  311  depressive disorder, not elsewhere classified

**DSM IV**
Axis I    311.   Depressive Disorder NOS
Axis II   799.9  Diagnosis Deferred on Axis II
Axis III  V71.0  No diagnosis on Axis III
Axis IV          Relational problems with boyfriend
Axis V           Current GAF: 45         Highest GAF past year:

NPP 0793

## ACCESS CENTER EVALUATION

| | | | |
|---|---|---|---|
| Name: MELINDA EUBANK | MIS: 46667 | Case #: 55322 | Eval Date/Time: 4/30/05  12:00 am |

**Medical clearance by:** n/a
Estimated length of stay: 3

Admission approved by: Boyapati, Karanthi MD
End time: 3:01 am          Duration: 44   mins

Evaluator's Signature: _____  Date: 4/30/05
TUCKER, MARY/BA

Psychiatrist's Signature: _____  Date: 4/30/05
Boyapati, Karanthi MD

SUPER CONFIDENTIAL
Not to be released without specific
written consent of the patient.
A general authorization for
release is **not** sufficient
for this purpose.